### No. 13,676.

CAROLINE AMELIA MILLER vs. THE MINOR, MAY MAUD MILLER ET ALS. AND SUCCESSION OF NICHOLAS MILLER AND WIFE (CONSOLIDATED.)

### SYLLABUS.

A grandfather left a will by which he bequeathed twenty thousand dollars to a minor grandchild, the daughter of a predeceased son, and the balance of his property he bequeathed to his children share and share alike. In this will he was dealing with his property in its entirety and not specifically, with reference to the disposable portion. The testator intended that the minor should only take twenty thousand dollars out of the whole estate, subject to the right of the minor, should she elect so to do, to claim her *legitime*. This claim being made on her behalf, she was not entitled to receive the legacy in addition to the *legitime*. The amount of the legacy had to be included and received as part of it. The minor having come to the succession by right of representation of her father, she was required to impute as a partial payment upon the *legitime* a sum of eight thousand dollars which her father had received as an advance thereon.

A PPEAL from the Civil District Court, Parish of Orleans— *King, J.*

*Buck, Walshe & Buck* for Caroline Amelia and William F. Miller, Appellants.

*Charles J. Theard,* tutor *ad hoc,* for the Minor, May Maud Miller. Appellee.

Miller vs. Miller et als.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Nicholas Miller married Catherine Lenzer. She died intestate in 1865. There were four children, issue of the marriage—Caroline Amelia Miller, William Francis Miller, Henry Miller, Nicholas Miller Jr., and Charles Albert Miller.

Nicholas Miller, Sr., died on March 25, 1900, leaving the following will and testament, which was duly probated:

NEW ORLEANS, MARCH 2ND, 1892.

"This is my last will and testament.

"I, Nicholas Miller, being in good health and of sound mind, do make this my last olographic will for the information of whom it may concern and for their guidance. Having confidence in my son, William Francis Miller, and also by friend, Frank Brinker, I appoint both of them my testamentary executors with seizin of my property, relieving them of the necessity of furnishing security or bond for the faithful discharge of their duty as executors; my sayed executors shall receive the usual legal commission. I give and bequeath to my niece, Rosine Brinker, the sum of three thousand dollars; to my two grandchildren, Edna Alice Miller, twenty thousand dollars; also to her young sister, May Maud Miller, twenty thousand dollars; both are children of my late deceased son, Charles Albert Miller, to whom I have already given in money and real estate to the value of eight thousand dollars.

"The balance of my property, real and personal, stocks, bonds, I shall die possessed of, goes to my then living children, share and share alike. It is my wish stocks, shares and bonds shall be divided evenly amongst them, and the real estate only sold at best advantage. I do further will that during the minority of my two grandchildren my executors named are to invest the amount in safe securities and the interest thereof or as much as necessary for their maintenance and education, provided their mother be unable to do so, but under no circumstances shall more than the revenues be expended for their maintenance. The capital of forty thousand dollars herein bequeathed to my grand children are to be invested either in State of Louisiana or of constitutional City of New Orleans bonds.

(Signed) "NICHOLAS MILLER."

Caroline Amelia Miller and William Francis Miller are still alive

Henry Miller died intestate and unmarried in 1883. Nicholas Miller, Jr., died on April 2, 1900, leaving a last will, by which he instituted his sister, Caroline Amelia Miller, and his brother, William Francis Miller, as his sole and universal legatees.

Charles Albert Miller married Alice De Silva, and died intestate in 1892, leaving as his heirs the two minors, Edna Alice Miller, and May Maud Miller  The minor, Alice Miller, died in 1893.

Alice DeSilva, widow of Charles Albert Miller, married S. L. Robinson.

The inventory taken in the succession of Nicholas Miller, Sr., and his wife showed as the apparised value of real estate sixty-five hundred dollars ($6500), and of personal property four hundred and twenty-nine thousand four hundred and four dollars and eighty-four ($429,404.84), or a total of four hundred and thirty-five thousand nine hundred and four dollars and eighty-four cents ($435,944.84).

In May, 1900, Caroline Amelia Miller filed a suit for a partition against the administrator of Mrs. Nicholas Miller, Sr., the executor of the will of Nicholas Miller, Sr, William Francis Miller, Mrs Alice DeSilva, widow of Charles Albert Miller (and afterwards wife of S. L. Robinson) and the minor May Maud Miller. This minor, being without a tutor, the court appointed Charles J. Theard as her tutor *ad hoc* to represent her.

In her petition for partition the plaintiff, referring to the rights of the minor, alleged that "as the legacy of twenty thousand dollars to the minor May Maud Miller was less than the *legitime* after collation of the eight thousand dollars, which as heir of her father, she was bound to collate in accordance with the last will and testament of said Nicholas Miller, the said minor will doubtless refuse said legacy and claim her *legitime,* in which event she will have an undivided interest in all the property belonging to the estate of Nicholas Miller, as she has in the property of the estate of Mrs. Nicholas Miller, Sr."

The interest of the minor in the separate property of Nicholas Miller, Sr., if she claim her *legitime,* was averred to be an undivided two-twelfths (2-12) interest; that of Caroline Amelia Miller to be five-twelfths (5-12ths); that of William Francis Miller an undivided five twelfths (5-12ths).

The tutor *ad hoc* of the minor, for answer to plaintiff's demand for a partition, averred that the minor as one of the forced heirs of Nicholas Miller, Sr., was entitled to her *legitime,* that is to say, one-fourth

of the two-thirds of all the property left by said deceased, and on behalf of said minor he submitted that she was also entitled to receive out of the disposable portion of the estate the particular legacy of twenty thousand dollars, and he prayed that her rights be recognized and fixed accordingly.

In the judgment rendered by the District Court it was among other matter adjudicated, ordered and decreed, that the minor May Maud Miller be recognized as one of the forced heirs of the late Nicholas Miller, Sr.; entitled as such to her *legitime,* that is to say, to one-fourth of the two-thirds of all the property left by him, and that the said minor be also recognized as particular legatee of the said deceased entitled to receive out of the disposable portion of his estate. and under the conditions specified in his will, the sum of twenty thousand dollars, that subject to the payment of said particular legacy and of any other particular legacy made by the late Nicholas Miller, Sr., and of all debts or charges whatsoever the property shall be partitioned in the following proportions, to-wit: The interest of the co-owners left by the late Nicholas Miller, Sr., are as follows:

Caroline Amelia Miller, five-twelfths.

William Francis Miller, five-twelfths.

The minor May Maud Miller, two-twelfths.

William F. Miller and Caroline Amelia Miller appealed. The parties agreed in the Civil District Court that the issue brought to the Supreme Court on the appeal involved simply the question as to the amount or portion of the estate the minor defendant may take under the will of the deceased and the law.

### OPINION.

Appellants insist that the heirs of the deceased having no ownership in his property prior to his decease, he had the right and exercised the right to convey title to the whole of it by his will, and that the rights and obligations of parties must be tested by a consideration of the instrument from that standpoint. The deceased did not in the will express any intention to deal with the disposable portion of the succession specifically as the object of his testamentary dispositions. He dealt with the entire succession and his testament conveyed his whole estate in so far as this could be done effectively, as in manner and form and extent provided for therein. Whether it would or not be and to what extent, it would or could be attacked, he left open to be

determined by subsequent events. The testator made no express declaration in the will as to his intention in reference to either the bequest to the minor or to that to the other heirs. We do not see in the situation of this succession anything which would make such a declaration needed. His will dealt with his entire succession, and that instrument expressed very clearly the precise amount he desired his heirs should take in it and out of it. C. C. 1232-1233; C. C. 1501.

We have to construe his intention by the light of its general provisions, and of the law of which he is to be presumed to have had knowledge, and by which he must be presumed to have been guided. We must assume that the testator was aware of the legal rights of his heirs, and the extent of his own power of disposition of his property.

The deceased, by his will, conveyed to his children, the whole of his estate, subject to the possibility of a claim being made by the minor—forced heir—for her *legitime*. The forced heir has the option to claim his rights or not, and the will was executed in favor of the other heirs from that standpoint, and was so accepted by them The exercise by the forced heir of his right to claim the *legitime* would simply render that part of the will extending over that portion of the estate ineffective to the extent the minor could legally exact it.

If the situation of a succession be such as to enable all of the heirs to receive their *legitime*, no one of the heirs has legal ground for complaint, if the testator in the matter of the disposable portion should have thought proper to discriminate in favor of one or more heirs against another. There is no illegal inequality in the disposal of the disposable portion; the testator can dispose of it as it suits him. All we are called on to do is to ascertain his intentions and enforce them.

We think his intention and wish are clear, that the whole estate, less twenty thousand dollars, to be first paid to the minor, should vest in his other children share and share alike, subject to the possibility of a demand by the minor forced heir for her *legitime* and subject to the legal enforcement of her rights in respect to the same, in manner, form, and to the extent as provided by law.

The will must stand as it is until attacked and set aside or modified, on a demand made by the minor, as a forced heir, that she was entitled to receive her *legitime*.

We do not see how it can be claimed, in view of the express provisions of the Civil Code, that the death of a party leaving descendants has the effect *ipso facto* of depriving the testator of the ownership in

property which belonged to him at that moment. The law does not, by the force of its own will, immediately by the fact of death, transfer a portion of the estate to what are known as "forced heirs." It will be observed that Articles 1493, 1494 and 1495 of the Code do not purport to make any change in the ownership of the property of the testator, and simply prohibit him from disposing of it to a certain extent to the prejudice of heirs holding certain relations to the deceased. He is at liberty to dispose of the whole property, subject, however, to the right of these heirs, if they feel themselves aggrieved, to have the will set aside to the extent necessary to secure to them as forced heirs, the legal portion coming to them. They are at liberty to make this claim only if they think proper to do so. If they do not make the claim the ownership conveyed by the will is maintained.

It is often supposed that by the term "forced heirs" the law has created a special kind of heirs, separate and distinct from the three kinds of heirs mentioned in Article 879 of the Code, so that that article shsould read:

There are four (not three) kind of heirs which correspond with four (not three) species of succession, to-wit:

· Testamentary or instituted heirs.

Legal heirs, or heirs of the blood.

Irregular heirs.·

*Forced heirs.*

This is a mistake. What are termed "forced heirs" are nothing more than certain legal heirs, who by reason of their relationship to the deceased have *had reserved to them the right* to claim as heirs, if they so elect, a certain proportion of the property of the deceased, and which he may have disposed of "to their prejudice." Article 1495 in referring to these heirs simply declares that they are "called" forced heirs, and assigns the reason for their being so "called." They are not forcedly made heirs by the law, nor is the action of the deceased in disposing of his entire property forcedly and absolutely null. His action in so doing is only subject to a successful attack by these forced legal heirs under proper conditions and circumstances, when legally claimed and established.

In this particular case it is claimed on behalf of the minor that she is entitled to take the full amount of the *legitime* coming to her regardless of the amount of eight thousand dollars, which her father in his life time had received from his own father. It is urged that these

eight thousand dollars, under the situation disclosed by the will, must be held to have been intended by Miller to be taken as a donation to the father from the disposable portion of his estate, free from collation, that he did not intend to force the minor into the position of considering this amount as having been received by her father simply as an "*avancement d'hoirie*" upon his *legitime* and as having, therefore, to be "imputed" as a partial payment upon the minor's *legitime*. Appellant insists that this amount of eight thousand dollars received by the father can not be ignored in the settlement of the succession; that it must be deducted from the amount coming to the minor from the *legitime*.

Article 1240 of the Civil Code declares that if "a child comes into the succession only by right of representation he must *collate* what has been given to his father, even though he should have renounced his succession." As applied to the *legitime*, we think, the word "impute" rather than the word "collate," should be used (Laurent, Vol. 12, Sec. 171.) The word "collation" in strictness is applied only to donations *inter vivos*. (Dalloz & Verge, under 843, No. 1), and the obligation of collation is founded on the equality which should be naturally between children and other lawful descendants. (C. C. 1229). The *"legitime"* is a constant, fixed by law in favor of each heir's part thereof. Delvincourt, Vol 2, P. 218, says: *"'La legitime n'est pas due en masse a lous les legitimaires mais a chacun d'eux pour sa part et celui qui a tout ce qui doit lui revenir dans l'indisposable ne peut attaquer ni faire reduire les liberalites."*

Appellants received their *legitime* under the will of their father. They could not attack any disposition made in fact by him of the disposable part of his estate, but they have the right to enquire what dispositions he did, in point of fact, make of this portion, and force the settlement of the succession on that basis. They deny that Miller originally made a donation of these eight thousand dollars to the minor's father from the disposable portion, free from collation, and they deny that he subsequently, in any manner released her from the obligation of taking that amount into consideration, should she claim her *legitime*.

We have to examine first, whether the eight thousand dollars, when received by the minor's father, was received by him, as a donation strictly such, or whether it was received by him, simply as an *"avancement d'hoirie,"* an advance or partial payment upon his prospective

share in his father's succession; next, whether (assuming the amount to have been received *"en avancement d'hoirie,"*) under the terms of the will and the circumstances of this case, that amount has to be accounted for or noticed in the ultimate settlement of the estate.

Receipt by an heir of an amount of money from his father in the absence of evidence to the contrary would be presumed to have been received by him as *"an avancement d'hoirie,"* and not as a "donation" without collation. If so received, the money would have to be accounted for in the settlement of the succession by *"imputation"* as a *"partial payment"* on the child's legal share in the succession, and not as a "donation" proper. Matters would remain in that shape and have to be disposed of in that way unless the father should later on transform the transaction from a partial payment to the heir by anticipation into a donation from the father to the son without the obligation of collating.

Counsel of the minor calls our attention to the declaration made by Miller in his will, that he had already "given" to the minor's father eight thousand dollars, and urges that he did not say that he had already "paid" eight thousand dollars to the minor's father, or that the latter had already "received" eight thousands dollars; that the word "give" means "to donate," and Miller must have intended to say that he had already "donated" that amount to his son; that it was his evident intention, when he wrote up his will, to pass a sponge over that particular transaction, and ignore it in the settlement; the allusion to the fact being solely made to explain why the minor was not given a larger legacy than he was making to her. He says that the will was made with knowledge of the exact situation of his affairs when it was made; that he was providing for the settlement of his *entire estate;* that he was fixing himself, so far as he could, the exact situation of the heirs, towards himself and *inter sese;* that his failure to direct these eight thousand dollars should be accounted for in any way is proof positive that he intended it should play no part in the settlement of the succession.

This argument loses its force, when we consider that the testator was dealing with the property as being subject in its entirety to his power of disposition, and that the provisions of the will must be viewed from that point of view.

It was evidently his desire that his entire property, less twenty thousand dollars, should be bequeathed to his children, and not to his grandchild. That the grandchild should not receive more than twenty

thousand dollars. The will was based, presumably, upon the hope and expectation that the minor might not claim the *legitime,* and that, under this condition of affairs the prior receipt by the father, of eight thousand dollars, should pass entirely out of view. No reference was made whatever to what the situation would be if the minor should claim the *legitime.* Should she claim it, she would be entitled to receive precisely what the law would give her, as an heir by representation of her father; that is, the amount of the *legitime,* reduced by a partial payment thereof to her father of eight thousand dollars. The law fixes what the *legitime* is, and what can be exacted under it, when claimed. If we were to ignore entirely the receipt by the minor's father of eight thousand dollars from his father, we are of the opinion that we would bring about a result evidently not intended by him; this we would not be justified in doing. We are not called on to express any opinion whether he should or should not have made a difference in disposition of his property. We can only deal with the situation from a legal standpoint. '

We next come to a consideration of the part which the special legacy of twenty thousand dollars, will play in the ultimate settlement of the rights of parties. It is said on behalf of the minor that there is nothing to force her to renounce this legacy. That is true, but of what practical benefit would it be to her to claim the legacy, if the direct, immediate, and unavoidable result of her doing this would be to diminish to the same precise amount her claim for *legitime.* By *legitime* is meant the amount which the forced heir is entitled to call for in the succession. When she gets that amount she cannot, legally complain. She can insist upon nothing more. If the minor takes in this succession twenty thousand dollars from her grandfather, she has, to that extent, not been prejudiced by the action of the grandfather. If she receive the legacy, she must, therefore, take the amount as so much received from the succession and she will have to limit her claim against the succession for the balance of the amount necessary to be supplied to give her full *legitime.*

For the reasons assigned, it is ordered, adjudged, and decreed, that the judgment of the District Court, in so far as it decrees the minor, May Maud Miller, to be entitled to receive from the succession of her grandfather, Nicholas Miller, Sr., the special legacy of twenty thousand dollars, made to her by her grandfather over and beyond her *legitime,* be, and the same is hereby annulled, avoided and reversed, and

it is now ordered, adjudged and decreed, that if the said legacy be accepted and paid, it be taken as a payment *protanto* upon the minor's *legitime*.

It is further ordered, that the judgment of the District Court be amended, so as to direct and require that the minor, May Maud Miller, impute upon her *legitime* as a partial payment heretofore made to her father, the sum of eight thousand dollars. As so altered and amended, the judgment of the District Court is affirmed.

BLANCHARD, J., concurs in the decree.

PROVOSTY, J., takes no part, this case having been submitted prior to his taking his seat on this bench.