ISIDORE B. DOCKWEILER AND THOMAS A. J. DOCKWEILER, AS EXECUTORS OF AND TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF GEORGE S. WILSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50828. Promulgated June 29, 1934.

*Isidore B. Dockweiler* and *Thomas A. J. Dockweiler*, pro se.
*M. B. Leming, Esq.*, for the respondent.

OPINION.

MARQUETTE: The respondent has determined a deficiency in estate tax of $2,677.69, all of which is in controversy, and which results from his action in reducing the deductions permitted by section 303 (a) (3) of the Revenue Act of 1926 from $279,698.47 to $92,035.06. The petitioners assert that this action is erroneous. Other errors as to deductions are alleged, but these have been settled by a stipulation of facts on which this proceeding is submitted, and which is made a part of this report.

The material facts of the stipulation are that George S. Wilson, hereinafter referred to as the testator, died testate on May 3, 1927, a resident of the County of Los Angeles, California. His will, which was executed April 23, 1926, was, by order of the Superior Court of the State of California in and for the County of Los Angeles, admitted to probate May 31, 1927. The petitioners are his qualified executors. The testator left surviving him no parent, child, or grandchild, but did leave surviving him, his wife, Katherine R. Wilson, whom he married on April 2, 1907. Since November 1912 the testator and his wife have lived separate and apart. On April 2, 1926, the testator, as party of the first part, and his wife, as party of the second part, entered into a written agreement, the provisions of which, after reciting that the parties were married, that they had lived separate and apart since November 26, 1912, that there was no issue of their marriage, that the second party had been contemplating the commencement of an action against the first party for separate maintenance, that " each of the parties hereto is desirous of determining for both the present and future their respective property rights and their respective financial obligations toward one another," that the second party was the owner of separate property of the estimated value of $50,000, that the first party was the owner of separate real and personal property described in the agreement, and that there was no community property, provided:

FIRST: In full and complete satisfaction of all financial claims and monetary demands and property claims and property rights of every name, kind, nature and character whatsoever that the said Katherine R. Wilson, said second party hereto, as wife, or as widow, or otherwise, has had or now has or might hereafter have against the said George S. Wilson, said first party hereto, or against the estate of said George S. Wilson, in the event of his death hereafter, as heir-at-law or otherwise, and in consideration of all other covenants and agreements in this agreement contained and on the part of the said Katherine R. Wilson to be kept and performed, the said George S. Wilson does hereby promise, covenant and agree, on behalf of himself and his estate, and his heirs, devisees, legatees, executors, administrators and assigns, to pay to the said Katherine R. Wilson, for the support and maintenance of herself, and as her sole and separate property, the sum of Two Hundred and

Fifty Dollars ($250.00) per month, in lawful money of the United States, commencing as of the date of October 1st, 1925, and to continue during the natural life of said Katherine R. Wilson, and whether they remain married or should hereafter for any cause be divorced, said payments to be made by said first party to said second party on the first day of each and every month hereafter by depositing to the credit of said Katherine R. Wilson the said sum of $250.00 per month on the first day of each and every month hereafter at Guaranty Office of the Security Trust & Savings Bank, 655 South Spring Street, Los Angeles, California, and to insure the payment of said monthly sum to said second party during the term of her natural life and beyond the period of the death of said first party, in the event he should die first, the said first party does hereby agree immediately to execute, in the manner provided by law, a will, under and by virtue of the terms of which said first party shall provide the payment to said second party of said $250.00 per month for and during her natural life, and which monthly payments shall take precedence of any and all other bequests and devises in such will contained, and shall receive first attention in matter of payment. * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

SECOND: All of the property of the said Katherine R. Wilson, both real and personal, now held by her or which shall hereafter be acquired by her in any manner whatsoever, shall be and remain her sole and separate property, free from any and all rights or claims of the said George S. Wilson, with full power to her to sell, convey, transfer, assign, mortgage, pledge, lease or deal with the same as if she were single. And the said George S. Wilson will, from time to time, but only in such manner, as not to create any personal liability on his part, execute any and all such deeds, conveyance, mortgages, pledges, leases and papers as may be necessary or proper to enable her to so sell, convey, transfer, assign, mortgage, pledge, lease or deal with her said property as she chooses.

And said George S. Wilson does hereby waive and surrender any and all right, in the event of the death of said Katherine R. Wilson, to act as the administrator of her estate, or to inherit any of her property as husband, or otherwise, and said George S. Wilson does hereby agree to never hereafter make any claim upon or against said Katherine R. Wilson or upon or against any of the property of said Katherine R. Wilson, either as surviving husband or otherwise, or upon or against her estate, and said Katherine R. Wilson shall have the uncontested right and privilege to dispose of any and all of her property by will, deed, or otherwise, as she sees fit, and on her death, in the lifetime of said George S. Wilson, all her separate estate, and all of her estate, whether real or personal, which she shall not have disposed of in her lifetime or by will, shall, subject to her debts and engagements, go and belong to the person or persons who would have become entitled thereto if the said George S. Wilson had died in the lifetime of said Katherine R. Wilson; and if the said Katherine R. Wilson shall die in the lifetime of the said George S. Wilson, he shall, without contest of any kind, permit her will to be proved, or administration upon her estate to be taken out by the person or persons who would have been entitled to do so had he, the said George S. Wilson, died in her lifetime.

THIRD: All of the property of the said George S. Wilson, both real and personal, now held by him, or which shall hereafter be acquired by him in any manner whatsoever, shall be and remain his sole and separate property, free from any and all rights and claims, except only as herein provided, of the said Katherine R. Wilson, with full power to him to sell, convey, transfer,

assign, mortgage, pledge, lease or deal with the same as if he were single. And the said Katherine R. Wilson will, from time to time (but only in such manner as not to create any personal liability on her part), execute any and all such deeds, conveyances, mortgages, pledges, leases and papers as may be necessary or proper to enable him to so sell, convey, transfer, assign, mortgage, pledge, lease or deal with his said property as he chooses. And the said Katherine R. Wilson, contemporaneously with the execution hereof, hereby agrees to properly execute and deliver to said George S. Wilson quit-claim deeds to all of said real property belonging to him and hereinbefore described.

And the said Katherine R. Wilson does hereby waive and surrender any and all right, in the event of the death of said George S. Wilson, to act as the administrator of his estate, or to inherit any of his property as wife or otherwise, and said Katherine R. Wilson does hereby agree to never hereafter make any claim for support or maintenance or alimony, counsel fees or costs in any action for divorce or separate maintenance or otherwise or at all, upon or against said George S. Wilson, or upon or against any of the property of said George S. Wilson, either as surviving wife or otherwise, or upon or against his estate, except as to and for said Two Hundred and Fifty Dollars ($250.00) monthly payment herein provided for her during her natural life, and said George S. Wilson shall have the uncontested right and privilege to dispose of any and all of his property except such as has been placed in trust as security hereunder by will, deed or otherwise, as he sees fit, except that in such will he shall provide for and secure to said Katherine R. Wilson the said monthly payment of $250.00 for each and every month during her natural life, and on his death, in the lifetime of said Katherine R. Wilson, all his separate estate, and all of his estate, whether real or personal, which he shall not have disposed of in his lifetime, or by will, shall, subject to his debts and engagements, and in particular to the payment of said $250.00 per month to said Katherine R. Wilson, go and belong to the person or persons wo would have become entitled thereto if the said Katherine R. Wilson had died in the lifetime of said George S. Wilson; and if the said George S. Wilson shall die in the lifetime of the said Katherine R. Wilson, she shall, without contest of any kind, permit his will to be proved, or administration upon his estate to be taken out by the person or persons designated in such will as the executors thereof, or by the person or persons who would have been entitled to do so had she, the said Katherine R. Wilson, died in his lifetime.

\* \* \* \* \* \* \*

All the payments provided in the agreement were made by the testator in his lifetime, and after his death by the petitioners as his executors.

In his will the testator, after bequeathing to relatives sums amounting to $3,000 and to charities sums amounting to $13,500, devised and bequeathed the residue of his estate in trust to the same persons whom he nominated as his executors in trust, to manage and control and to pay to his widow, Katherine R. Wilson, $250 per month so long as she lived, and to pay to a cousin $100 a month during his lifetime, the remaining income to be divided among certain charities. At the death of the survivor of the two beneficiaries the trust is to cease and the corpus is to be divided among the same charities

who received the income. In April 1928 the petitioners, as executors, filed their estate tax return in which they reported a gross estate of $387,014.82 and took deductions in the amount of $335,421.69 and claimed the specified exemption of $100,000, leaving no net estate tax. The deductions included charitable bequests and devises in the amount of $279,698.47. The respondent accepted the return, but reduced the charitable deductions to $92,035.06. He made no other changes. The respondent, on brief, states that all the institutions named in the will fall within section 303 (a) (3) of the Revenue Act of 1926.

Neither Katherine R. Wilson nor any other person has objected to the will or to the order of probate. On December 7, 1931, the petitioners filed in said Superior Court their second and final account and report as executors. On January 19, 1932, there was filed in the court report of the inheritance appraiser which was approved February 1, 1932, and which determined that the bequests and devises to charities were exempt from the inheritance tax of California. On February 27, 1932, the court entered its order of settlement and final distribution. No appeal from that order has been taken. The letters testamentary to the petitioners have not been revoked.

The respondent insists that under section 1313 of the Civil Code of California[1] the devises and bequests to the charities are valid only to the extent of one third of the testator's estate. The petitioners concede that this would be true but for the agreement between testator and his wife of April 2, 1926. They insist that by this agreement the testator's wife, the only person alive who fell within the last proviso to the section, has waived the restriction contained therein. Whether the agreement operated as a waiver is the only question before us.

It is clear that if no parent, wife, child, or grandchild had survived the testator he could have devised and bequeathed any part or

---

[1] § 1313. *Restriction on Devise for Charitable Uses; Exceptions.* No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made at least thirty days prior to such death, such devise or legacy and each of them shall be valid; provided, that no such devise or bequest shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a pro rata deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee (and) devisee, next of kin, or heirs, according to law; and provided, further, that bequests and devises to the state, (or to any municipality, county, or political subdivision within the state), or to any state institution, or for the use or benefit of the state or any state institution, or to any educational institution which is exempt from taxation under section one a of article thirteen of the constitution of the State of California, or for the use or benefit or any such educational institution, are excepted from the restrictions of this section; provided, however, that nothing in this section contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no parent, husband, wife, child, or grandchild, or when all of such heirs shall have by writing, executed at least six months prior to his death, waived the restriction contained herein.

all of his estate to charities, provided his will had been executed six months prior to his death. *In re Bartlett's Estate*, 122 Cal. Ap. 375; 10 Pac. (2d) 126. In California, as elsewhere, the policy of equity is to favor charities. *In re McDole's Estate* (Sup. Ct. of Cal.), 10 Pac. (2d) 75. Section 1313 does not disclose a different conception. Thus it was said in *Dwyer's Estate*, 159 Cal. 680; 115 Pac. 235:

> Now, as to such legislative intent: There is no limitation under the laws of this state, except as prescribed by section 1313, upon the right of a person to dispose of his property in favor of charitable purposes. He may by gift in his lifetime devote all his property thereto. He has a legal right to do so. He may with equal legal right dispose by will of all his property in favor of charities provided he leaves no heirs at law. It is only when he leaves such heirs that his power of disposition by will is restricted. But this is not by reason of any public policy of this state against dispositions in favor of charity. In fact, the state has no such public policy. It is well settled here that dispositions to charity are looked upon with favor, and the courts will uphold all such gifts whether made by a donor in his lifetime or by a testator, when it can be done consistently with the rules of law. The theory of section 1313 is not to prevent charities from receiving testamentary gifts of property. It is not a mortmain statute; not an expression of a policy of the state against the accumulation of vast properties or the centralization of wealth in mortu manu. It was not designed to operate upon the capacity of corporations or institutions or individuals to take charitable testamentary gifts, but solely as a limitation on the power of a testator to make them when he had legal heirs. The purpose of the section was remedial; to prevent what was deemed a wrong and injustice to those who should naturally be the recipients of the bounty of a testator—his heirs at law. It was not enacted for the public good or as a matter of state polity, but for the benefit exclusively of those named in it—the heirs at law—and as a protection against hasty and improvident gifts to charity by a testator of his entire estate to the exclusion of those who in the judgment of the Legislature had a better claim to his bounty. * * *

To bring this home, it is only necessary to point out that here the only person who could have benefited by the restriction was the testator's wife, who had the right to waive it. Did the agreement of April 2, 1926, accomplish this result?

We think that this agreement was valid. No one contends otherwise. Sections 158, 159, and 160 of the Civil Code of California. *Clover's Estate*, 179 Cal. 313; 176 Pac. 472; *Fitch* v. *Tyler*, 105 Cal. App. 306; 288 Pac. 74.

The main purpose of the agreement was to settle for the present and for the future all the property rights and financial obligations of the parties to one another. To this end the testator confirmed to his wife all her property as her separate property, and she likewise confirmed to him his property. He agreed to pay her $250 a month during her lifetime. All this was done in full and complete satisfaction of all claims and demands which she, as wife, widow,

or otherwise might then or thereafter have against him, or against his estate in the event of his death in her lifetime, as heir at law or otherwise. She agreed that, subject to his debts and the payments of the $250 a month to her, on his death in her lifetime his estate should go to the persons who would have been entitled thereto if she had died in his lifetime, and, further, that she would without contest permit his will to be proved. It thus appears that under the agreement the only right which his wife had against the testator was to the monthly payments of $250 during her life. With the exception of this right she was a stranger to his estate after the execution of the agreement.

It remains to apply the last proviso to section 1313, which was enacted in 1919, to these facts. No California case in point has been cited to us and we have been unable to find one. We must therefore decide this case as a new proposition. The question should be approached in the light of certain accepted rules of statutory construction. Thus, in *Smythe* v. *Fiske*, 23 Wall. 374, the court said:

A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law. * * *

In *United States* v. *Katz*, 271 U.S. 354, the Court laid down the following rule:

All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose. See *Hawaii* v. *Mankichi*, 190 U.S. 197, 212, and cases there cited. * * *

To the same effect see *Gulf States Steel Co.* v. *United States*, 287 U.S. 32.

The agreement of April 2, 1926, falls within the letter of the proviso in that it was executed over six months before the testator's death and, in our opinion, it falls within its spirit in that it divested the testator's wife of all interest in his estate except her annuity, and this in no way conflicted with the gifts to charity. Any further formal waiver would have been a futile gesture. She had nothing to waive. The law does not require the doing of that which is unnecessary. Such a construction would result in an absurdity.

In our opinion the agreement of April 2, 1926, was effective as a waiver of the restriction in the proviso to section 1313. *Estate of Valentine Janson*, 3 B.T.A. 296, relied upon by respondent, is not in point. There, at the time of the testator's death the bequests were void. Here, we have held them to be valid.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*