**ESTATE OF Herbert J. HARVEY Jr.
(Thomas B. Lemann and Michael S.
Liebaert, Co–Executors)**

v.

**UNITED STATES of America.**

Civ. A. No. 87–1494.

United States District Court,
E.D. Louisiana.

Feb. 11, 1988.

Thomas B. Lemann, T.A., Perry Staub, Richard Kait, Monroe & Lemann, New Orleans, La., for plaintiffs.

Paul M. Predmore, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter was submitted to the Court on a stipulation of facts. The Court heard oral argument on the briefs on January 27, 1988. Having considered the record, the stipulation of facts, the arguments of counsel, and the applicable law, the Court rules as follows. To the extent any of the fol-

173–74 (2d ed. 1983) (distinguishing costs, expenses, and attorney's fees).

lowing findings of fact constitute conclusions of law, they are adopted as conclusions of law; to the extent any of the following conclusions of law constitute findings of fact, they are adopted as findings of fact.

■ This is a tax refund case. The parties dispute whether the IRS may disallow an estate tax deduction under I.R.C. § 2055 for a testamentary bequest to charity where the bequest was voidable by the exercise of a forced heir's rights under Louisiana law but where the forced heir and her assigns did not, and now cannot, exercise those rights to challenge the charitable bequest. Because equity, statutory language, and Congressional intent all point against the IRS' attempt effectively to collect tax from the charity, the IRS must refund the tax and interest it erroneously and illegally assessed and collected in this matter.

### Findings of Fact [1]

On August 27, 1981, at age 45, Herbert Harvey Jr. died. He had been a resident and domiciliary of New Orleans; he had never married, had any siblings, or begotten or adopted any children. His father having died before him, his sole heir was his 81–year old mother, Marion Harvey; as such, she was his forced heir under Louisiana law.[2]

On September 17, 1981, the coexecutors of his estate instituted proceedings in the Civil District Court for Orleans Parish to probate his will. In his will, Herbert made a few general and specific bequests to friends and family, including a bequest to his mother of his interest in her home, but he left the residue of his estate, which exceeded two-thirds of his gross estate, to the Azby Fund. Marion signed Herbert's will as an attesting witness and on September 10, 1981, as part of the request to probate his will, signed an affidavit to attest further to his will.

On June 9, 1982, while the probate proceedings for Herbert's will were still pending, Marion died, with no forced heirs. She also had been a resident and domiciliary of New Orleans and left the residue of her estate to the Azby Fund (though, instead, as the charitable remainder interest in a qualified unitrust).

All the particular bequests in Herbert's will have been funded. By judgment of possession rendered October 15, 1987, the Azby Fund has been recognized as the sole residuary (universal) legatee under Herbert's will and, as such, has been placed in possession of all the remaining assets in Herbert's estate.

Neither Marion nor her estate ever sought to assert a forced heirship claim against Herbert's estate; specifically, neither sought to reduce Herbert's residuary bequest to the Azby Fund. According to Marion's sister, Marion had ample means of her own and never expressed any intention of asserting a reduction claim against Herbert's estate; according to her federal estate tax return, Marion's gross estate totalled $8,800,517, her taxable estate $5,497,359, and her bequest to the Azby Fund $1,878,166. On September 8, 1983, the executor of Marion's estate (Thomas Lemann, who is also one of the coexecutors of Herbert's estate) executed an Act of Renunciation and Confirmation, renouncing all rights to assert a forced heirship claim against Herbert's estate; no other written renunciation or disclaimer of Marion's forced heirship rights was ever executed. Finally, the five-year prescriptive period for bringing an action for the reduction of an excessive donation has now passed.[3]

The Azby Fund is a nonprofit charitable Louisiana corporation the Harvey family set up in 1969. The Azby Fund is a qualified charitable organization within the meaning of I.R.C. §§ 170(c) and 2055 and holds tax-exempt status.

On November 24, 1982, the coexecutors of Herbert's estate timely filed a federal estate tax return for his estate. They valued the gross estate at $9,508,711 and took a deduction of $7,041,713 for the charitable bequest to the Azby Fund. After auditing

---

**1.** The facts in this matter being stipulated, the Court simply narrates those facts it finds are pertinent.

**2.** Former La.Civ.Code art. 1494 gave forced heirship rights to a decedent's surviving parents. The article was repealed on July 18, 1981, but the repeal does not apply to the estates of per-

sons who died before January 1, 1982. *See* La.Acts 1981, No. 442, § 3.

**3.** *See* La.Civ.Code art. 3497; *West v. Gajdzik,* 425 So.2d 263, 266 (La.App. 3d Cir.1982) (prescription begins to run on the date the will is filed for probate), *writ denied sub nom. West v. Savoie,* 428 So.2d 475 (La.1983).

the return, the IRS disallowed the charitable deduction to the extent it impinged on Marion's legitime[4] and on March 24, 1986 sent a deficiency notice for $1,113,392.35.[5] Pursuant to the notice, the coexecutors paid this full amount on April 3, 1986 and filed a Claim of Refund on June 30, 1986.

More than six month elapsed after the coexecutors filed the Claim of Refund, but the IRS neither allowed nor disallowed the claim. Accordingly, Thomas Lemann and Michael Liebaert, both Orleans Parish residents appearing in their representative capacities as the coexecutors of Herbert's estate, filed this action on April 2, 1987 for a refund on behalf of Herbert's estate for the full $1,113,392.35 paid to the IRS.[6]

### Conclusions of Law

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1346(a)(1).[7] Venue is proper in this district under 28 U.S.C. § 1402(a)(1).

Section 2055 of the Internal Revenue Code of 1954, as amended, permits a federal estate tax deduction for charitable bequests to qualified donee organizations.[8] Treasury Regulation § 20.2055–2(b)(1) addresses the effects of powers and conditions precedent or subsequent on these charitable transfers.[9]

4. The legitime, also known as the reserve or legal or forced portion, is that interest in a succession of which forced heirs may not be deprived. On the legitime and forced heirs, see La.Civ.Code arts. 1493–1518 (West 1988).

5. Of this amount, $675,154 was for taxes and $438,238.35 for interest. In Paragraph (h) of its Explanation of Adjustments accompanying its deficiency notice, the IRS explained its reasons for the disallowance as follows:

(h) It is determined that the reduction of the gross estate for the charitable bequest ... is limited to $5,742,652.00, the amount actually available for distribution to the charity under the laws of the jurisdiction in which the estate is administered, rather that [sic] $7,041,713.00, the amount returned. Accordingly, the taxable estate is increased $1,299,061.00.

Although no express stipulation was made as to the dollar amount the residuary bequest impinged upon Marion's legitime, the Court infers that the IRS calculated this amount to be $1,299,061 and that plaintiffs do not contest the IRS' calculation. The IRS also increased the valuation of certain property in the gross estate and included a deduction for the federal income tax Herbert paid in 1981; all the adjustments (except possibly the one concerning the valuation of certain tangible personal property in Marion's home) concerned property that passed to the Azby Fund. *See also infra* note 6.

6. While plaintiffs have abandoned their challenges to the IRS' increased valuation of certain properties in Herbert's gross estate, *see supra* note 5, the parties have stipulated that "[t]he increases in the gross estate effected by these adjustments do not alter the quantum in dispute herein, inasmuch as each dollar increase in the gross estate effects a corresponding increase in the allowable charitable deduction." Thus, the entire $1,113,392.35 deficiency assessment remains at issue.

The action also seeks an adjustment to the estate return to reflect the coexecutors' administrative expenses incurred in the processing of this claim. The IRS agrees that the coexecutors may submit evidence of such additional expenses at the conclusion of this litigation.

7. *See also* I.R.C. §§ 6532(a)(1), 7422(a) (1982); Treas.Reg. §§ 301.6402–2, 301.6532–1(a) (1987).

8. I.R.C. § 2055(a)(2) (1982) reads in pertinent part:

§ 2055. **Transfers for public, charitable, and religious uses.**
(a) **In general.**—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers—

. . . . .

(2) to or for the use of any corporation organized exclusively for religious, charitable, scientific, literary, or educational purposes ...

. . . . .

For purposes of this subsection, the complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be a qualified disclaimer with the same full force and effect as though he had filed such qualified disclaimer.

9. 26 C.F.R. § 20.2055–2(b)(1) (1982) reads in full as follows:

§ 20.2055–2 **Transfers not exclusively for charitable purposes.**

. . . . .

. (b) *Transfers subject to a condition or a power.* (1) If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effec-

■ Although the IRS appeared once to argue that a testamentary bequest is void to the extent it impinges on a forced heir's legitime,[10] the IRS now properly concedes that such a bequest is not void, but merely voidable.[11] The IRS "acknowledges that the entire residual bequest to the Azby Fund was in fact received by the charitable organization, and no portion of that bequest was actually received by Marion Harvey."[12] Implicitly, then, the IRS seems to further properly concede that such a bequest is valid and effective upon the decedent's death[13] and that a forced heir is not seized of any legal interest in the bequeathed property unless and until he takes legal possession of the interest through a successful reduction action.[14] Nor does the IRS contest that the Azby Fund in fact received the entire residuary

bequest or that neither Marion nor her estate received any of the bequest. Thus, the IRS makes a most ambitious argument: since no written disclaimer was timely made under I.R.C. § 2518, no charitable deduction is allowable under I.R.C. § 2055 for the excessive portion of the charitable donation because Marion *could* have asserted her forced heirship claim.

In their briefs, plaintiffs cite several old, non-Louisiana cases for the proposition that an unchallenged, though voidable, bequest to charity is always fully deductible under I.R.C. § 2055, even where no written disclaimer is made before the federal estate tax return is filed.[15] Because the Court disposes of this matter on other, narrower grounds, it does not decide whether those cases support plaintiffs' broad proposition

*tive is so remote as to be negligible.* If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund *which is exempt from an exercise of the power.*

10. *See supra* note 5 (quoting deficiency notice ¶(h)).

11. La.Civ.Code art. 1502.

12. Defendant's Reply Brief at 1.

13. *Cox v. Von Ahlefeldt,* 105 La. 543, 30 So. 175, 213 (1900); *Miller v. Miller,* 105 La. 257, 29 So. 802, 804 (1900); *Ramsey v. Ramsey,* 385 So.2d 919, 924 (La.App. 2d Cir.1980).

14. *Succession of Martin,* 234 La. 566, 100 So.2d 509, 512–13 (La.1958); *Sun Oil Co. v. Tarver,* 52 So.2d 437, 443–44 (La.1951); *see also Baten v. Taylor,* 386 So.2d 333, 340 (La.1979) (distinguishing seizin and ownership).

The sole suggestion to the contrary could be implied from certain comments made by both the district court and the Fifth Circuit in *Bel v. United States,* 310 F.Supp. 1189, 1196–97 (W.D. La.1970), *aff'd in part and remanded in part,* 452 F.2d 683, 693–94 (5th Cir.1971), *cert. denied,*

406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972) that for marital deduction purposes under I.R.C. § 2056 forced heirs are treated as receiving the property interest from their legitime upon the decedent's death (instead of only after a successful reduction action). Employing Louisiana's civilian method of citing the opinion of a noted codal commentator (Professor Yiannopoulos) as a source of Louisiana law and having the hindsight of *Ramsey's* and *Baten's* reaffirmation of the earlier controlling Louisiana law, plaintiffs argue that these comments misstate Louisiana law. This Court finds it unnecessary to uphold plaintiffs' position—a task better fit for the Fifth Circuit—for these comments do not apply to the charitable deduction provisions of I.R.C. § 2055, but rather concern (former) antidisclaimer and settlement provisions found in I.R.C. § 2056 and without counterpart in I.R.C. § 2055. *See Estate of Stern v. Comm'r,* 90 T.C. No. 12, slip op. at 17–19 (Jan. 26, 1988) (Docket No. 4440–85).

15. *Estate of Varick v. Comm'r,* 10 T.C. 318 (1948), *acq.,* 1948–2 C.B. 4; *Dumont's Estate v. Comm'r,* 150 F.2d 691 (3d Cir.1945); *Estate of Blossom v. Comm'r,* 45 B.T.A. 691 (1941); *Comm'r v. First Nat'l Bank of Atlanta,* 102 F.2d 129 (5th Cir.1939); *Dimock v. Corwin,* 99 F.2d 799 (2d Cir.1938), *other issue appealed and aff'd sub nom. United States v. Jacobs,* 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939); *Mead v. Welch,* 95 F.2d 617 (9th Cir.1938); *Humphrey v. Millard,* 79 F.2d 107 (2d Cir.1935); *Dockweiler v. Comm'r,* 30 B.T.A. 1136 (1934); *see also* Private Letter Ruling No. 8015015 (Dec. 28, 1979), Fed. Estate & Gift Tax Rep. (CCH) ¶ 12380. None of these cases discusses the significance, if any, of the temporal relationship between (1) the filing of the decedent's federal estate tax return and (2) any written disclaimer by an heir or any final judgment in the state probate proceedings of the decedent's estate.

or whether those cases remain valid law today.

At oral argument, plaintiffs cited the Court to a decision from the Tax Court decided just one day before and concerning very similar issues.[16] In that case, the IRS had disallowed a charitable bequest to the extent it impinged on the legitime of a Louisiana decedent's forced heirs where the forced heirs waived their forced heirship rights, and the charity took possession of the bequest, over a year after the decedent's federal estate tax return was filed. The Tax Court held that the charitable deduction was allowable under the facts of that case.

This Court finds the Tax Court's reasons to be persuasive and adopts them as its own. But this Court need not rest on those reasons alone; inasmuch as Marion died before the filing of Herbert's federal estate tax return and her residuary (universal) legatee was, like Herbert's, the Azby Fund, the Court finds other grounds for its holding.

■ The last sentence of I.R.C. § 2055(a) is central in this case:

> [T]he complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be a qualified disclaimer with the same full force and effect as though he had filed such qualified disclaimer.

The second sentence of Treasury Regulation § 20.2055–2(b)(1) describes the appropriate test for determining a "complete termination" so as to permit a charitable deduction:[17]

> If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable.

In short, as applied to this case, the test is whether the possibility of any forced heirship claims being asserted was "so remote as to be negligible."[18]

In I.R.C. § 2055(a), Congress has decided that the relevant time for the test should be "before the date prescribed for the filing of the estate tax return." The treasury regulations, however, are less clear: Reg. § 20.2055–2(b)(1) sets this time to be "as of the date of decedent's death," while Reg. § 20.2055–2(c) effectively sets this time to be the same as in the statute, namely, within the time period (including extensions) for filing the estate return.[19]

■ The Court has found no rational explanation for what possible regulatory purpose the IRS could have in moving the relevant time period to be earlier than the estate return filing date. To the extent the time period in subsection (b) of the regulation is intended to apply instead of the one in subsection (c) and in the statute, the time period in subsection (b) irreconcilably conflicts with the clear and unambiguous terms of I.R.C. § 2055 and thus cannot control. At the least, the regulations are ambiguous and should be construed against the IRS since its position would defeat the Congressional purpose of I.R.C. § 2055 in promoting charitable donations.[20]

■ With this proper understanding of the statute and regulations, the IRS cannot succeed against Herbert's estate. As soon as Marion died, the possibility of any forced heirship rights being asserted against Herbert's estate was "so remote as to be negligible." While Marion's forced heirship rights may not have extinguished

---

**16.** *Estate of Stern v. Comm'r,* 90 T.C. No. 12 (Jan. 26, 1988) (Docket No. 4440–85).

**17.** The first sentence of Reg. § 20.2055–2(b)(1) does not apply in this case because, as the IRS concedes, the charitable bequest was effective immediately upon Herbert's death and was not dependent on any act by the forced heir. The last sentence of Reg. § 20.2055–2(b)(1) does not apply either because a forced heir is not a "legatee, devisee, donee, or trustee." For the full text of Reg. § 20.2055–2(b)(1), see *supra* note 9.

**18.** *See also Wyly v. United States,* 662 F.2d 397, 400–01 (5th Cir.1981).

**19.** 26 C.F.R. § 20.2055–2(c) (1982). From 1975 to 1984, Treas.Reg. § 20.2055–2 remained unchanged, and it is that version of the regulations that applies in this case. In 1986, subsection (c) was amended, but on this point it remained effectively unchanged. *See* 26 C.F.R. § 20.-2055–2(c)(1)(ii) (1987).

**20.** *Comm'r v. Sternberger's Estate,* 348 U.S. 187, 190 n. 3, 75 S.Ct. 229, 231 n. 3, 99 L.Ed. 246 (1955).

with her death,[21] the only possible person to assert these rights after her death was the Azby Fund, for Marion had no forced heirs herself, had a more than sufficient estate to fund all her general (particular) bequests, left no particular legacy as to these rights,[22] and left the residue of her estate under her will by universal title solely to the Azby Fund. But it is inconceivable that the Azby Fund acting as the successor to Marion's forced heirship rights would have ever sought to assert such rights against itself as the residuary donee from Herbert's estate; if the Azby Fund had so acted, it would have enjoyed the gracious privilege of ending up with over one million dollars less than it would otherwise.[23] Since this circumstance arose before Herbert's estate return was filed, there was a complete termination of the forced heirship rights within the meaning of I.R.C. § 2055 so that no qualified disclaimer was necessary.[24]

■ But even if the relevant date for determining remoteness were the date of Herbert's death, the Court would still find a complete termination to have occurred. As counsel for the IRS admitted, the Court may look to the parties' objective intent in determining remoteness.[25] Considering this intent, the Court finds that the possibility of Marion's ever asserting any forced heirship rights (even if she had never died) was so remote as to be negligible.

Like her son, Marion was a very wealthy woman with almost no debt. Being over 80 years old when her son died and having ample means of her own, she had little need for more money. As her sister indicated, Marion expressed no intention of ever asserting any forced heirship rights against her son's estate. Her will and her son's will, to which she personally attested as a witness,[26] betray a common testamentary plan intended to fund the charitable Azby Fund. Finally, she joined in the request for probate of Herbert's will by executing after Herbert died an affidavit attesting to Herbert's will. In sum, while perhaps none of these points alone constitutes a "complete termination" under I.R.C. § 2055 of Marion's right to assert any forced heirship claims against Herbert's bequest to the Azby Fund, together they show that Marion never intended to assert any forced heirship rights she had against her son's estate.

At oral argument, counsel for the IRS raised the following hypothetical: among the property the Azby Fund received from Herbert's estate were certain valuable paintings; the administrators of the Fund

21. *See* La.Civ.Code art. 1504 (a reduction action may be maintained "only by forced heirs, or their heirs or assigns").

22. *See id.* art. 3556(5) ("Assigns means those to whom rights have been transmitted by *particular* title; such as … legacy … .").

23. Plaintiffs suggest this point in terms of legal doctrine; they argue that any forced heirship claims the Azby Fund received by virtue of being Marion's universal legatee were in fact immediately extinguished under the doctrine of confusion. La.Civ.Code art. 1903. The Government argues that this Court lacks jurisdiction to consider this argument inasmuch as plaintiffs did not set forth this basis in their administrative claim. *See Mallette Bros. Construction Co. v. United States,* 695 F.2d 145, 155 (5th Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); Treas.Reg. § 301.6402–2(b)(1). This Court rejects this last-ditch effort. First, plaintiffs' argument on this point raises no new factual points that were absent in the administrative claim. Second, with the IRS' shifting theories of alleged liability, *see supra* text accompanying notes 10–11, this Court cannot find that plaintiffs had not adequately alerted the IRS that this ground was among the bases for their position that "[t]axpayer disagrees with [the IRS'] interpretation of the Louisiana law,"

*see* Exh. 10 at 2 (explanation #8 to Claim for Refund). *See Helis v. Usry,* 496 F.2d 1319, 1321 (5th Cir.1974).

24. The IRS argues that a formal disclaimer under I.R.C. § 2518 would be the only permissible proof that the contingency of Marion's asserting any forced heirship claim was so remote as to be negligible. The argument must fail, for otherwise there would be no purpose for the provision in I.R.C. § 2055 that "complete termination … shall be considered and deemed an irrevocable disclaimer."

25. It is for this reason that the Court overruled the IRS' objection as to relevancy of Exhibits 7–9 (the state court pleadings in Marion's succession, her federal estate tax return, and her last will). The succession pleadings and the will are also relevant to the confusion issue discussed above.

26. In passing, plaintiffs suggest that Marion's being an attesting witness to Herbert's will constituted a confirmation or ratification of Herbert's will and thus precluded her from asserting any forced heirship rights. Plaintiffs' Brief at 7 & 19 n. 6 (citing former La.Civ.Code art. 2274 (1870); *Nolan v. Succession of New,* 31 La.Ann. 552 (1879)). The Court does not decide this issue.

decide to sell one of these paintings to a Mr. XYZ; Marion cannot stand Mr. XYZ and would rather have the painting destroyed than see Mr. XYZ own it; she is sure Herbert would have felt the same way; she tries to persuade the administrators not to sell the painting to him, but they are unmoved; she asks her lawyers what she can do; they suggest that she assert her forced heirship rights to stop the Fund from selling the painting to Mr. XYZ. With this most hypothetical hypothetical, counsel argues that the chance that Marion might have asserted her forced heirship rights for this personal/noneconomic reason could not "be ignored with reasonable safety in undertaking a serious business transaction." [27] As suggested by the Tax Court [28] and as specifically noted by plaintiffs at oral argument, the hypothetical could never arise, for a universal legatee would never be put in possession of property from the decedent's estate until after the forced heirs had waived (by prescription, written renunciation, or otherwise) their statutory rights to their legitime in this property. To presume that a universal legatee might receive any property from a Louisiana decedent's estate otherwise would require this Court to presume legal malpractice on the part of the estate's executors and attorneys; this Court will not presume as much and specifically notes that in this case the Azby Fund did not receive its legacy until after (1) a written renunciation was made by the executor of Marion's estate and (2) the five-year prescriptive period for asserting forced heirship rights had passed.

In sum, the possibility that Marion or her assigns would have ever asserted any forced heirship rights against Herbert's estate so as to defeat any excessive donation to the Azby Fund was so remote as to be negligible, and thus Herbert's estate was entitled to a charitable deduction for the full amount of the donation to the Azby Fund.

## CONCLUSION

As the Eighth Circuit stated in a similar case:

This case presents none of the abuses which § 2055[ ] was designed to prevent, and the government concedes as much. A deduction is claimed only for those amounts that were actually received by the [ ] charit[y]. The deduction should be allowed.[29]

Herbert's estate is entitled to a full refund of the $1,113,392.35 the IRS erroneously and illegally assessed and collected. Within ten days, plaintiffs shall submit a proposed form of final judgment.

---

**27.** *United States v. Dean*, 224 F.2d 26, 29 (1st Cir.1955).

**28.** *See Estate of Stern*, slip op. at 15.

**29.** *Oetting v. United States*, 712 F.2d 358, 363 (8th Cir.1983).