MALLETTE BROS. CONSTRUCTION CO., INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

GAUTIER ASPHALT COMPANY, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

MALLETTE BROS. TRUCK LINES, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 81–4374 to 81–4376.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1983.

Rehearing and Rehearing En Banc Denied March 2, 1983.

146

Michael L. Paup, Chief App. Sec., Carleton D. Powell, Terry L. Fredricks, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

C. Everette Boutwell, Laurel, Miss., for plaintiff-appellee.

Before WISDOM, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

These suits for tax refunds essentially involve the tax effect of funds and assets transferred among three related corporations having few financial records. Following an audit of those records that did exist, the Internal Revenue Service assessed deficiencies against each corporation for its fiscal years ended in 1972 and 1973. The corporations paid the assessments and sued for refunds. Following a trial, the jury rendered verdicts in favor of the corporations on all issues. The Government appeals, contending in the case of two of the corporations that there is no evidence to support the jury verdicts, and in the case of the third corporation that it was error for the district court to submit to the jury an issue not raised in the corporation's claim for a refund. We agree with the Government and reverse the judgments of the district court.

## I. FACTS AND DECISION BELOW.

Mallette Bros. Construction Co., Inc. ("Construction") is in the business of building and paving highways, parking lots and parking areas. Gautier Asphalt Company, Inc. ("Gautier") manufacturers asphalt in its own plant. Mallette Bros. Truck Lines, Inc. ("Truck") operates long-haul trucks. The capital stock of each of these corporations is owned in equal shares by Glynn Mallette and his brother, Mosely A. Mallette. All the corporations use the accrual method of accounting; however, each has a different tax year. Construction's tax year ends on January 31; Gautier's ends on June 30; and Truck's ends on February 28.

Early in 1974, the Internal Revenue Service conducted an audit of all three corporations for their tax years ended in 1972 and 1973. The audit was conducted by Revenue Agent William H. Shelton. Testimony at trial indicates that the corporations did not maintain any general ledgers. The records of the corporations reviewed by Agent Shelton included tax returns, invoices, cancelled checks, deposit tickets, bank statements, minute books, stock books, a log book maintained by Construction listing its asphalt purchases, delivery tickets prepared by Gautier listing the respective dates, buyers and quantities of asphalt delivered by Gautier and work papers prepared by Buck Albin, an independent accountant hired by the corporations to prepare all tax returns at issue here other than Construction's tax return for the year ended January 31, 1972. In general, Agent Shelton used the bank deposits method, supplemented with his audit of various records and documents maintained by the corporations, in reconstructing the three corporations' gross taxable income. He relied almost exclusively on his audit of the underlying documents and records in determining what deductions and credits each of the corporations was entitled to claim.

Based on Agent Shelton's audit, the Internal Revenue Service assessed the following deficiencies against the three corporations:

| Fiscal Year Ended | Construction | Gautier | Truck |
|---|---|---|---|
| 1–31–72 | $ 8,461.40 | | |
| 2–28–72 | | | $ 4,242.67 |
| 6–30–72 | | $ 5,838.74 | |
| 1–31–73 | 24,712.70 | | |
| 2–28–73 | | | 15,076.43 |
| 6–30–73 | | 11,994.68 | |

The three corporations paid the deficiencies, together with interest, on July 8, 1974, and filed claims for refunds. After these claims were denied, each of the corporations instituted a separate suit for a refund.

Before trial, Gautier conceded that the Internal Revenue Service's determination as to its tax liability for the year ended June 30, 1973 was correct. Additionally, as a result of net operating loss carrybacks, the Internal Revenue Service issued a refund for a portion ($4,216.89) of Truck's tax liability for the year ended February 28, 1973 (leaving only $10,859.54, plus interest, remaining in issue at the trial), and a complete refund of Truck's tax liability for the year ended February 28, 1972. Accordingly, these amounts are not at issue here.

The district court ordered that the separate cases brought by the corporations be consolidated for all purposes. Subsequently, the case was tried to a jury on special

interrogatories. During the trial, the Government moved for a directed verdict following the presentation of the corporations' case and again following the presentation of the Government's case. The court denied both of these motions. The jury decided each of the issues presented to it adversely to the Government. Initially, with respect to Construction, the jury found that for the year ended January 31, 1972, the "plaintiff [Construction was] entitled to deduct, as expenses paid or incurred, the amount of $21,977.26, and that this deduction was not allowed by the Government." As to Construction's year ended January 31, 1973, the jury found that Construction was "entitled to deduct, as expenses paid or incurred, the amount of $93,326.79 and that this deduction was not allowed by the Government." As to Gautier's year ended June 30, 1972, the jury found that Gautier did not "understate its accounts receivable by $37,687.32, as determined by the Internal Revenue Service." Finally, as to Truck's year ended February 28, 1973, the jury found that Truck "in its federal income tax return . . . [did not] understate its gross income by $39,994.62, as determined by the Internal Revenue Service. . . ." The district court subsequently entered judgments on the jury verdict reflecting the jury's findings.

On April 27, 1981, the Government filed motions requesting judgments notwithstanding the verdict. Primarily, the Government argued in each of these motions that its "motion for directed verdict should have been granted because the plaintiff's evidence, including all reasonable inferences which may be drawn therefrom, considered in its most favorable light to the plaintiff, does not establish" that the deficiency assessed by the Internal Revenue Service was in any way erroneous. As to Truck, the Government renewed an objection made at trial that there had been a fatal variance between Truck's claim for a refund and the claims presented by Truck at trial concerning alleged loans from Construction to Truck. Additionally, the Government noted that the district court had entered a judgment holding that the

Government's adjustments had resulted in an overstatement in Truck's gross income of $39,994.62 when Truck had not even challenged that determination except insofar as the judgment exceeded $11,794.62. Following a hearing, the district court entered orders denying the Government's motions. This appeal followed.

## II. PROPRIETY OF A JUDGMENT NOV AS TO CONSTRUCTION AND GAUTIER.

On appeal, the Government urges that the district court erred in not entering a directed verdict or a judgment notwithstanding the verdict in favor of the Government as to each of Construction and Gautier. Specifically, the Government argues that there was no evidence to support the jury's determination that Construction was entitled to deduct, as expenses paid or incurred, the amounts of $21,977.26 for 1972 and $93,326.79 for 1973, and that these deductions had not been allowed by the Government. As to Gautier, the Government argues that there was no evidence to support the jury's determination that Gautier had not understated its accounts receivable (and its gross income) for 1972 by $37,687.32.

Before we review the evidence, it would be useful to set forth the taxpayers' burden in these cases and the standard of appellate review. Every taxpayer must maintain accounting records which enable him to file a correct tax return. I.R.C. § 6001; Treas.Reg. § 1.446–1. Where a taxpayer's books and records are incomplete or do not accurately reflect income, the Internal Revenue Service is authorized to use whatever method it deems appropriate to reconstruct the taxpayer's income. I.R.C. § 446(b); *Webb v. Commissioner,* 394 F.2d 366, 371–72 (5th Cir.1968); *see also United States v. Firtel,* 446 F.2d 1005, 1006–07 (5th Cir.1971). Any ensuing deficiency notice is accompanied by a presumption of correctness which places the burden on the taxpayer of establishing all matters necessary to show that it does not owe the taxes in question. *Southwestern Life Insurance*

*Co. v. United States,* 560 F.2d 627, 635 (5th Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978) (citing *Helvering v. Taylor,* 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935)); *Webb, supra,* 394 F.2d at 372. A taxpayer seeking a refund must demonstrate not only the error in the asserted deficiency but also the amount of the refund to which he is entitled, i.e., the correct amount of his tax liability. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Griffin v. United States,* 588 F.2d 521, 530 (5th Cir.1979).

■ The district court is required to direct a verdict in favor of the Government or to enter a judgment notwithstanding the verdict in its favor if, considering all of the evidence in the light and with all reasonable inferences favorable to the taxpayer, the district court concludes that the taxpayer has failed to present substantial evidence either that the Internal Revenue Service's determination is erroneous or as to the correct amount of his tax liability. *Group Life & Health Insurance Co. v. United States,* 660 F.2d 1042, 1050–51 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982); *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969).

### A. Construction.

Turning first to the jury's verdict that Construction was entitled to deduct, as expenses paid or incurred, the amounts of $21,977.26 for 1972 and $93,326.79 for 1973, and that these deductions had not been allowed by the Government, we begin by noting that Construction conceded during the trial that Agent Shelton had properly determined its gross income for 1972 and 1973 and further that Agent Shelton had not improperly denied any of its claimed deductions. Instead, Construction's position at trial was that for each dollar of additional gross income discovered by Agent Shelton, it was entitled to an additional payroll deduction or an additional expense deduction for asphalt purchased. Allegedly, these deductions had not previously been claimed by Construction, nor had they been

allowed by Agent Shelton. Construction's position was that deductible expenses for asphalt and payroll were understated by approximately the same amount as was gross income and, consequently, that the taxable income reported on its original return was basically correct.

Four witnesses testified at the trial, two for the corporations and two for the Government. The two witnesses for the corporations were Glynn Mallette, Secretary-Treasurer and a 50% stockholder of each of the corporations, and Winn Alexander, a certified public accountant from Wiggins, Mississippi, who testified as an expert in accounting, auditing and taxation matters. The principal Government witness was Agent Shelton. Agent Shelton testified that in conducting his audit, he had discovered that the books and records maintained by the three corporations did not accurately reflect their income. As noted, none of the corporations maintained general ledgers. The work papers that did exist contained discrepancies and omissions. To determine each corporation's gross income, therefore, Agent Shelton initially analyzed the deposit tickets and bank statements for the two bank accounts (a general account and a payroll account) maintained by each corporation. Agent Shelton then subtracted from the total amount deposited to the accounts of each corporation amounts received which were nontaxable, such as loans, insurance checks, transfers between accounts maintained by the same corporation and amounts received as adjustments for prior purchases. Since each of the corporations used the accrual method of accounting, Agent Shelton then added income accrued but not yet received.

After determining each corporation's gross income, Agent Shelton proceeded to determine the deductions (including expenses accrued, but not yet paid) that the corporation was entitled to claim. That determination was made primarily by examining the underlying documents—invoices, checks, Gautier's delivery receipts and Construction's log books. Turning to the specific expense items at issue here for Con-

struction—asphalt purchases and payroll expenses—Agent Shelton testified that in order to determine the amount of asphalt purchased by Construction each month for each of the years in question (1972 and 1973), he used the delivery receipts prepared by Gautier and Construction's log of purchases to make a schedule listing the cost of asphalt purchased each month. Similarly, in determining the appropriate payroll expense deductions for Construction, Agent Shelton used the actual checks and the bank statements from the payroll account maintained by Construction.

No testimony was ever offered by Construction suggesting that Agent Shelton's schedule of asphalt purchases was erroneous—that he had failed to include all of the transactions disclosed by the delivery receipts and log or that the delivery receipts and log were incomplete. Glynn Mallette, one of Construction's two witnesses, testified on cross-examination by the Government that the total amount of asphalt purchased by Construction from Gautier, and its cost, could properly be determined from the log maintained by Construction. Mr. Alexander, the other witness for Construction, testified that although he believed, for the reasons addressed below, that Construction was entitled to additional deductions for asphalt purchased, he did not know how much asphalt Construction had actually purchased during the years in question. Insofar as payroll expense is concerned, except for the theory addressed below, no witness for Construction offered any testimony questioning Agent Shelton's calculations or the records he relied on. Mr. Mallette testified generally that he could not "point out any error" in plaintiffs' exhibit 8, which was the income tax audit changes (Form 4549) prepared by Agent Shelton. Mr. Alexander's testimony did not specifically address Construction's payroll expense. In summary, the only testimony which specifically addressed actual expenses paid or incurred by Construction for asphalt and payroll for 1972 and 1973 was that of Agent Shelton.

Instead of presenting specific testimony, Construction contended, through the testimony of Mr. Alexander, that Agent Shelton had erred in not using the double entry system of accounting in adjusting its tax liability. Mr. Alexander's testimony is both legally and factually erroneous. Factually, the argument appears to be based on the premise that Agent Shelton had arrived at each corporation's tax liability for 1972 and 1973 simply by making adjustments to the work papers prepared by Mr. Albin, the certified public accountant who prepared the corporation's tax returns. Since those work papers were prepared on a double entry basis and were in balance, the corporations argued that, in the case of Construction, the concededly correct increase by Agent Shelton in the gross income of Construction should, as a theoretical matter, have been accompanied by offsetting deductions for payroll and asphalt purchase expense, lest the corporation's accounts somehow become out of balance. No reason was given by Mr. Alexander as to why those expense accounts were selected rather than others, and no testimony was given as to specific amounts omitted from those accounts.

As an initial matter, we note that Mr. Albin did not prepare Construction's 1972 tax return and there is no evidence in the record of this case that a double entry set of records existed for that year. Therefore, the factual predicate for Mr. Alexander's testimony as to the correctness of Agent Shelton's deductions for 1972 fails. As to 1973, Agent Shelton's testimony makes it amply clear that he did not arrive at his figures for the taxable income of the corporations for the years involved simply by making adjustments to Mr. Albin's work papers. He testified that those work papers contained too many inaccuracies and omissions to be used for that purpose. Rather, as explained above, using the underlying documents, he prepared his own work papers. For this reason, Construction's challenge to the deficiency assessment, which is based on a factual predicate as to the source of that assessment finding no support in, and in fact directly contradicted by, the record, must fail.

One of the legal bases for Mr. Alexander's testimony was arguably abandoned by the corporations' counsel at trial, but it may have resurfaced in their appellate briefs and will be briefly addressed. Mr. Alexander testified repeatedly in his direct examination that as a theoretical matter, if the Government, upon audit, increases the taxpayer's gross income, it must also increase deductible expenses by an equal amount. *E.g.,* "If they were going to add it to income, they should have treated it as a deduction." On cross examination, however, Mr. Alexander conceded that there are instances in which the Internal Revenue Service can properly find unreported income without allowing an offsetting and equal deduction. We need say no more than that, as a matter of law, Mr. Alexander was correct on cross examination, and his statements on direct examination cannot be used as a basis for supporting the jury verdict.

Although Mr. Alexander's testimony at trial and the corporations' appellate briefs are somewhat unclear on this point, they may be making a related argument that there is some sort of legal requirement that the Government use the double entry method of accounting simultaneously to reflect items of income and expense when it reconstructs a taxpayer's taxable income on audit. But, as the Governmental correctly points out, the bank deposits method, as used and supplemented by Agent Shelton in this case, is not a method of accounting—as distinguished from the double entry system of accounting—but is, instead, an audit procedure used by the Government to establish a taxpayer's correct taxable income. *See Snyder v. Commissioner,* 28 T.C.M. (CCH) 856, 866 (1969) ("[The bank deposits and expenditures method] is not a system of accounting; it is not a substitute for either the cash or the accrual basis of accounting or any other recognized method of keeping books. When correctly applied to the facts of a particular situation it is merely evidence of income.") (citing *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) (to the same effect, dealing with the net worth method)). Because the Government's only objective, in employing the bank deposits method, as supplemented by Agent Shelton in this case, is to reconstruct taxable income, the Government is concerned only with transactions entered into during the relevant periods that affected taxable gross income or deductible expenses. It was, therefore, unnecessary for Agent Shelton to record every transaction on a double entry basis in the manner which would be required for an accounting of the transaction in accordance with generally accepted accounting principles. If Construction was of the view that the deficiency assessments for 1972 and 1973 resulting from Agent Shelton's auditing procedures were inaccurate because items of deductible expense paid or incurred by Construction had not been taken into account, then it was incumbent upon it to offer specific proof of those items and of the fact that they had not been allowed. No such specific proof was offered by Construction. Instead, Construction chose to rely on testimony by Mr. Alexander about the theoretical necessity under generally accepted accounting principles for double entries, which was inapposite, and the theoretical necessity under the audit method employed here for deductions to offset the concededly proper increase in Construction's gross income, which is legally incorrect.

■ In summary, we agree with the Government that Construction offered *no* credible evidence to support the jury's verdict that Construction was entitled to deduct, as expenses paid or incurred, the amounts of $21,977.26 for 1972 and $93,326.79 for 1973, and that these deductions had not been allowed by the Government. The district court erred in not granting a judgment notwithstanding the verdict in favor of the Government as to that portion of the jury verdict.

### B. Gautier.

■ The jury's verdict that Gautier, on its tax return for 1972, did not "understate its accounts receivable by $37,687.32, as determined by the Internal Revenue Service" also finds no support in the record.

During the course of his audit, Agent Shelton determined that the amount of gross income reported on Gautier's income tax return for 1972 had been understated by $38,662.40. The principal component of this adjustment was $37,687.32 in income Gautier had accrued from sales of asphalt to Construction for which no payment had been made as of June 30, 1972, the close of Gautier's taxable year.

In arriving at the $37,687.32 figure, Agent Shelton testified that he used the same schedule (plaintiffs' exhibit 8(A)) that he had used to determine Construction's expenses for asphalt purchased from Gautier. This schedule listed both the total amount of asphalt purchased by Construction from Gautier (as credits) and the total amount of money transferred by Construction to Gautier during each month (as debits). The column entitled "Balance" represented the amount of money Construction owed to Gautier for asphalt received by Construction, but not yet paid for. Because Gautier's tax year ended on June 30, Agent Shelton determined that Gautier was obligated to report in its return for 1972 the amount of income accrued, but not yet paid, as of June 30, 1972, or $37,687.32. Finally, Agent Shelton testified that this $37,687.32 was also included in the $158,385 allowed Construction as a deduction for asphalt purchased from Gautier during its fiscal year ended January 31, 1973.

The only evidence produced on Gautier's behalf was Mr. Alexander's testimony. He testified that the $37,687.32 was indeed "[f]or asphalt that the construction company still owed the asphalt company for." Mr. Alexander also admitted that if the figures in exhibit 8(A) were correct, the $37,687.32 figure was also correct. He contended, however, that because Agent Shelton had failed to make a separate entry on Construction's books reflecting this expense, the adjustment to Gautier's income was improper. This theory sounds somewhat like the theory with respect to double entry accounting (or auditing) advanced by Mr. Alexander with respect to Construction, except that in this case, the alleged impropriety related to a supposed failure of Agent Shelton to allow a related company (Construction), as distinguished from the taxpayer (Gautier), a separate, corresponding deduction in an amount equal to the amount of the taxpayer's unreported gross income.

■ As a legal matter, it is irrelevant whether Construction actually received a deduction for the amount of income unreported by Gautier. Construction and Gautier are separate taxable entities. Income must be reported by, and is taxable to, the taxpayer who earns it. *E.g., Helvering v. Eubank,* 311 U.S. 122, 124–25, 61 S.Ct. 149, 150–51, 85 L.Ed. 81 (1940); *Helvering v. Horst,* 311 U.S. 112, 115–20, 61 S.Ct. 144, 146–49, 85 L.Ed. 75 (1940); *Lucas v. Earl,* 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930).

In support of Mr. Alexander's novel legal proposition, Gautier cites only two sources—*Lustman v. Commissioner,* 322 F.2d 253 (3d Cir.1963), and Treas.Reg. § 1.1312–6(a). In *Lustman v. Commissioner,* the Court of Appeals for the Third Circuit affirmed the trial court's determination that the taxpayer had failed to present sufficient evidence demonstrating that it was entitled to certain deductions the taxpayer had claimed. One of the factors noted by the Court of Appeals in reaching this result was that a related corporation had failed to include these items in its gross income. *Lustman, supra,* at 256–58. We agree with the Government, however, that the case hardly stands for the proposition that one entity may exclude amounts of admitted income if another corporation does not claim a corresponding deduction.

Treas.Reg. § 1.1312–6(a) provides that where a determination is made either allowing or disallowing a deduction or a credit as to one corporation, and as a result a "correlative deduction or credit [is] erroneously allowed, omitted, or disallowed in respect" to an affiliated corporation, even though the correction of the second error is normally barred by the statute of limitations, it will be taken into account in determining the correct tax liability of the first corpora-

tion. Once again, we agree with the Government that this position does not support the proposition that Gautier is entitled to either an exclusion or a deduction from its gross income to reflect an expense incurred but allegedly not deducted by Construction.

Finally, the only evidence in the record as to whether Construction was, in fact, allowed a deduction for the amount added to Gautier's income consisted of the testimony of Agent Shelton referred to above. He explained that the $37,687.32 figure cannot be separately found in his calculations because it was a part of the $158,385 figure Construction was allowed for purchases of asphalt for its year ended January 31, 1973 (the $37,687.32 figure being for Gautier's year ended June 30, 1972). Agent Shelton testified that both figures came from the same schedule.

In summary, Gautier produced no evidence other than legally incorrect assertions of Mr. Alexander in support of the jury verdict that Gautier, on its tax return from 1972, did not understate its accounts receivable by $37,687.32, as determined by the Internal Revenue Service. The district court was in error in refusing to grant the Government a judgment notwithstanding the verdict on this point.

### III. THE VARIANCE BETWEEN TRUCK'S REFUND CLAIM AND THE ISSUE AS TO THE LOANS TO TRUCK SUBMITTED TO THE JURY.

Upon completion of Agent Shelton's audit, Truck received a notice of deficiency and copies of the audit reports prepared by Agent Shelton. After paying the tax liability, Truck filed a claim for refund. As relevant here, Truck alleged the following in its claim for refund:

> The taxpayer should be permitted to exclude the $39,995 from gross income as it consists of inter-company adjustments for which no corresponding deduction has been allowed in two affiliated companies; if intercompany accounts were to be set up, to be proper, they should have been reconciled & balanced in detail between the 3 affiliates.
>
> . . . .
>
> The taxpayer should be allowed to exclude from its gross income any income also included in the income of its two affiliated corporations, and/or to take a deduction for any intercompany adjustment properly considered as an adjustment to income of the two affiliates, which such item would accordingly be a deduction to one or both of the affiliates.

In its complaint, Truck simply incorporated the various allegations contained in its claim for refund. In addition, Truck alleged that "[t]he assessment and collection of the deficiency plus interest was erroneous and illegal."

During discovery, the Government, by interrogatory, requested, with respect to the above assertions, answers to the following questions

■ With respect to such allegations, (a) state the *facts* upon which such allegations are based, . . . and (e) state specifically (1) whether the $39,995 constituted gross income to the plaintiff for its fiscal year ended February 28, 1973, (2) whether the $39,995 was reported as income in the plaintiff's federal income tax return for the fiscal year ended February 28, 1973, (3) the heading under which the $39,995 was reported in the plaintiff's federal income tax return for the fiscal year ended February 28, 1973, (4) the names of the "two affiliated companies" referred to, (5) the facts which indicate that the companies referred to are "two affiliated companies," (6) the facts which indicate that a corresponding deduction should have been allowed in "two affiliated companies," (7) the amount of the $39,995 which should have been allowed as a deduction to each of the two affiliated companies, (8) whether the "two affiliated companies" reported the $39,995 in their federal income tax returns, (9) the amount of the $39,995 which each of the "two affiliated companies" reported in their federal income tax returns, respectively, and (10) the facts which indicate

that each such amount was properly reported in such returns, respectively.

Truck's response was as follows:

4. (a) Purchases and sales between the Plaintiff and its two (2) affiliates had already been accounted for and set up in inter-company payables and receivables, and the additional $39,995 was not owed. In any event, if the additional $39,995 was to be added to the plaintiff's income, it should have been picked up on the books of one or more affiliates as a deduction.

. . . .

(e)(1) No.

(2) No.

(3) N/A

(4) Mallette Bros. Construction Co., Inc.

Gautier Asphalt Company, Inc.

(5) Glynn Mallette and Moseley A. Mallette each own 50% of the capital stock of the three (3) corporations.

(6) The $39,995 is a part of the $45,660 shown by the IRS as "A/R Asphalt", erroneously indicating that the Gautier Asphalt Company, Inc. was indebted to the plaintiff for that amount. In the alternative, the Asphalt Company should have been allowed a deduction on its books by the IRS for the corresponding amount of $39,995, thereby reducing its income.

(7) $39,995 to Gautier Asphalt Company, Inc.

(8) No.

(9) None.

(10) Work papers prepared in connection with the preparation of the Federal Income Tax Return showed that inter-company accruals had already been made.

At the pre-trial conference, Truck simply repeated the above contentions. Thus, in the pre-trial order, Truck stated under its claim of ultimate facts that "[b]ecause of these adjustments the income of the plaintiff [Truck] is overstated by the amounts thereof, and the plaintiff brings this action to recover income taxes and interest that resulted from this . . . $15,076 [$10,859 after the net operating loss carrybacks] for 1973."

One week before the trial, Truck's counsel called Jack D. Warren, the attorney representing the Government in the trial court, and informed him for the first time that he intended to argue that the increase in gross income determined by Agent Shelton was erroneous because the $39,994.62 adjustment consisted of loans received from Construction. Subsequently, on March 9, 1981, the day the trial commenced, Truck served its second supplemental answer to the interrogatories, which provided as follows:

4. (e)(6) The answer is amended to the following: $28,200,00 [sic] of the $39,995 adjustment consisted of loans received from the Mallette Bros. Construction Co., Inc. that were erroneously included in the income of the Truck line company. The $28,200 in loans should have been deducted from gross income on the Truck Line's return, in as much as the loans did not represent taxable income to the Truck Line Corporation.

During the trial, Mr. Mallette testified that eleven checks totaling $39,200 represented loans from Construction to Truck. The Government objected on the ground that the allegation was not set forth in the claim for refund or in the pleadings. Mr. Warren argued that it was unfair to allow Truck to raise this issue at such a late hour—long after discovery had been completed. Truck's counsel argued that the omission in the interrogatories was "a typographical error or something." Truck also claimed that the "innercompany [sic] adjustment" language in the claim for refund included the loan argument.

The district court overruled the Government's objection, finding that "it is apparent that there was a typographical error . . . in the answers to interrogatories that were given by the plaintiff because it is apparent that the plaintiffs are contending that these were loans, or at least innercompany [sic] adjustments . . . ." In addition, the court noted that Mr. Warren addressed

the loan argument in his opening statement. The court did not address the variance with the claim for refund, although that issue was clearly raised by Mr. Warren's objection.

When requested to state for the record where specifically in the answers to the interrogatories the typographical error occurred, Truck's counsel stated that it was in question 4(e)(6) (set forth above) of the original set of answers. He further stated that the response "was meant to be the same thing as the first response for the first year which is identical to the problem and an identical thing. We said that these were loans—the exact wording: 'This consisted of loans from affiliate, Mallette Bros. Construction Company, Inc.' "

■ Taxpayer suits for refunds are governed, in part, by the principles of sovereign immunity. The United States may be sued only where Congress has expressly provided its statutory consent. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586–88, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). In suits for tax refunds, the United States has consented to be sued, but only when the taxpayer follows the conditions set forth in I.R.C. § 7422(a). That section provides that "[n]o suit [for refund] . . . shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." Treas.Reg. § 301.6402–2(b)(1) provides, in pertinent part, as follows:

(b) *Grounds set forth in claim.* (1) No refund or credit will be allowed . . . except upon one or more of the grounds set forth in a claim [properly] filed . . . . The claim must set forth in detail each ground upon which a credit or refund is claimed and the facts sufficient to apprise the Commissioner of the exact basis thereof. . . .

■ Absent a waiver by the Government, a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund. *See Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 295–99, 65 S.Ct. 1162, 1163–65, 89 L.Ed. 1619 (1945); *United States v. Felt & Tarrant Manufacturing Co.,* 283 U.S. 269, 272–73, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931); *Group Life & Health Insurance Co. v. United States, supra,* 660 F.2d at 1058–59; *Southwestern Life Insurance Co. v. United States, supra,* 560 F.2d at 630–32. The alleged error must be clearly and specifically set forth in the refund claim. A generalized plea of error will not suffice. *See Angelus Milling Co. v. Commissioner, supra,* 325 U.S. at 296–97, 65 S.Ct. at 1164–65; *United States v. Felt & Tarrant Manufacturing Co., supra,* 283 U.S. at 272, 51 S.Ct. at 377; *Stoller v. United States,* 444 F.2d 1391, 1393 (5th Cir.1971). As this court stated in *Alabama By-Products Corp. v. Patterson,* 258 F.2d 892, 900 (5th Cir.1958), *cert. denied,* 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959):

All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. *United States v. Garbutt Oil Co.,* 1938, 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405. Anything not raised at that time cannot be raised later in a suit for refund. *Carmack v. Scofield,* 5 Cir., 1953, 201 F.2d 360, 362.

One purpose of these rules is to assure that the Commissioner is apprised of the exact nature of the claim and the facts upon which the claim is advanced so that there is an opportunity to make an administrative determination of the claim. *United States v. Felt & Tarrant Manufacturing Co., supra,* 283 U.S. at 272, 51 S.Ct. at 377; *Stoller v. United States, supra,* 444 F.2d at 1393. Another purpose is "to limit the litigation to the issues which have been re-examined by the Commissioner and which he is prepared to defend." *Carmack v. Scofield,* 201 F.2d 360, 362 (5th Cir.1953).

█ In this case, Truck's claim for refund cannot be read to raise the loan issue, and we do not understand the district court to have concluded otherwise or, for that matter, even to have addressed the issue. Truck's contention that the "intercompany adjustments" language raised this issue is not supported by a fair reading of the claim for refund. Each time that phrase was used, it was used in conjunction with the assertion that a corresponding deduction should have been allowed to one of the other affiliated corporations. That very fact necessarily negates Truck's argument that what was being asserted as a ground for error was the existence of loans to Truck (which are not deductible to the lender). Thus, even if the Commissioner were compelled to hazard a guess as to the nature of Truck's claim for refund (which he clearly is not), the refund claim would actually have sent him in the wrong direction.

Truck argues that the scope of the Government's examination was such that the Government was prepared to defend Truck's claim that the intercompany transfers constituted loans. But the Supreme Court made clear in *Angelus Milling* that the fact that the Commissioner has investigated the underlying facts relating to the claim will not suffice in the absence of a showing that the Commissioner understood the specific claim that was made. *Angelus Milling, supra,* 325 U.S. at 296–97, 65 S.Ct. at 1164–65.

Turning to the question of Truck's answers to the interrogatories, the district court found that a typographical error was made by Truck in response to question 4(e)(6). We agree with the Government that it is difficult to understand how Truck can contend that the omission of the phrase "[t]his consisted of loans from affiliate, Mallette Bros. Construction Company, Inc." was a typographical error where no such assertion was made in the claim for refund, the complaint, the first supplemental answers to the Government's interrogatories or the pretrial order. Furthermore, the response to question 4(e)(6) referred to Gautier, not Construction. But apart from the accuracy of the district court's finding as to the existence of a typographical error, we note that the finding that a typographical error occurred does not even address the question whether the Government was on notice of the nature of the claim. Typographical errors (in the form of omissions) may well fall into two categories—those in which the omitted material might fairly have been understood by the reader in spite of the error, and those in which the omitted material could not be understood from a reading of the document. Clearly, whether the omission in this case was the result of a typographical error or not, the omitted material could not be fairly ascertained from the contents of the responses to interrogatories.

█ The district court seems to have believed that the Government had waived the right to object to the variance between the grounds set forth in Truck's claim for refund and those asserted in its second supplemental answers to the Government's interrogatories and at trial. It is clear that the Government may waive the requirements of the regulations with respect to the detailed grounds and facts to be included in a claim for a refund. *See United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 69–73, 53 S.Ct. 278, 281–82, 77 L.Ed. 619 (1933). It is equally clear that a taxpayer asserting a waiver bears an extremely heavy burden of proving such a waiver. As the Supreme Court said in *Angelus Milling, supra,* 325 U.S. at 297–98, 65 S.Ct. at 1164–65:

Since, however, the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commis-

sioner understood the specific claim that was made even though there was a departure from form in its submission.

*Accord, Group Life & Health Insurance Co. v. United States, supra,* 660 F.2d at 1058–59; *Salyersville National Bank v. United States,* 613 F.2d 650, 651–52 (6th Cir.1980); *Southwestern Life Insurance Co. v. United States, supra,* 560 F.2d at 630–32.

First, we note that the Government counsel at trial clearly and unequivocally asserted his objections to the introduction of the loan issue, and there can be no argument made in this case that the Government failed to object. The fact that Government counsel discussed the loan issue in his opening remarks and put on evidence with respect to it simply cannot be considered to have constituted a waiver of the Government's right to insist that the claim for refund set forth all the grounds for refund. We agree with the Government that if such a rule were to be established, trial attorneys for the Government would have a Hobson's choice. They would have to either stand on the variance (and thus possibly lose the issue on the merits at the trial level) and then appeal on the variance question, possibly requiring another trial, or abandon the variance argument in the hopes of prevailing on the merits, thereby obviating the necessity of an appeal and another trial.

The prejudice to the Government that occurred when Mr. Mallette was permitted to testify that eleven checks totalling $39,-200 constituted loans from Construction to Truck is apparent. Agent Shelton testified that during his audit, he had treated all but $11,000 of the $39,200 at issue as "income to the truck lines" because "they were written off as expenses by the Construction Company." When asked by the court whether he was able to ascertain for what purposes the checks were given, Agent Shelton testified that he was able to ascertain that they were made in payment for hauling by, and purchases of diesel fuel from, Truck. If the checks in fact represented loans, and that fact had been timely disclosed, the Government could have used this fact as an additional reason for denying, at least in part,

the claim of Construction. Further, if the issue had been raised in the claim for refund, the Government might have been able to make an additional assessment against Construction reflecting the additional taxes due because of improper deductions. In allowing Mr. Mallette to testify concerning these loans, the district court opened the door to the possibility of a windfall to Construction in which Construction would have been allowed a deduction for $28,200, to which it might not have been entitled, and at the same time Truck would have been allowed to exclude from income the same $28,200.

In summary, we find that the district court erred in submitting to the jury Truck's claim that certain amounts received by it from Construction were nontaxable loans.

REVERSED.