ROBERT AND SHARON CAGLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cagle v. Commissioner
Docket No. 17231-91
United States Tax Court
T.C. Memo 1993-217; 1993 Tax Ct. Memo LEXIS 220; 65 T.C.M. (CCH) 2707; May 19, 1993, Filed *220 Robert and Sharon Cagle, pro sese. For respondent: Trevor T. Wetherington. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Additions to Tax
Section [1]
Section Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6653(a)
6653(a)
6661 (1)(A)
(1)(B) 1983
$ 19,833.08
$  9,916.54
* $   --  --
$ 4,833.00
1984
33,466.50
16,733.25
* --  --
8,262.00
1985
12,189.00
6,094.50
* --  --
2,930.00
1986
2,745.00
--    --
137.25
**
--   *221 As an alternative to the additions to tax for fraud under section 6653(b) for 1983, 1984, and 1985, respondent determined that petitioners are liable for the additions to tax under section 6653(a)(1) and (2) (negligence) for each such year and under section 6651(a) (failure to file) for 1983. The issues for decision are: (1) Did petitioners understate their taxable income for each of the years 1983 through 1986? We hold that they did. (2) Are petitioners liable for the additions to tax for fraud for each of the years 1983, 1984, and 1985? We hold that they are. [2]
(3) Are petitioners liable for the additions to tax for negligence for 1986? We hold that they are. (4) Are petitioners liable for the addition to tax under section 6661 for each of the years *222 1983, 1984, and 1985? We hold that they are. (5) Are petitioners liable for self-employment tax for each of the years 1983, 1984, 1985, and 1986? We hold that they are. (6) Are petitioners liable for earned income credit recapture for each of the years 1983, 1984, and 1985? We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [3] Petitioners were residents of Fort Worth, Texas, at the time of the filing of the petition herein. Petitioners filed a joint Federal income tax return for 1983 on December 19, 1984. Petitioners timely filed joint Federal income tax returns for 1984 and 1985. Petitioners filed a joint Federal income tax return for 1986 on September 21, 1987. Petitioner *223 Robert Cagle (Robert) completed part of tenth grade. He is and was during the years at issue experienced in operating a roofing business, having operated his own such business since 1971. Petitioner Sharon Cagle (Sharon) graduated from high school. While in high school, Sharon studied accounting. Beginning in September 1980, she took courses in bookkeeping and office machinery at Tarrant County Junior College. The bookkeeping course was basically a refresher course on the accounting which Sharon had taken in high school. The accounting and bookkeeping courses which Sharon studied in high school and junior college covered basic accounting and bookkeeping concepts for businesses, including how to write checks, prepare ledgers in accordance with the general ledger system, and itemize income and expenses. The office machinery course which Sharon took in junior college familiarized her with the use of adding machines. Sometime prior to December 1980, Sharon worked part-time in a high school accounting office. Sharon's course work and experience in accounting and office machinery made her capable of understanding basic accounting and bookkeeping concepts and how to keep a general *224 business ledger and operate an adding machine. Petitioners' income tax returns for 1983, 1984, and 1985 were prepared by the same return preparer (Joy Massengale), and their return for 1986 was prepared by a different return preparer (Richard E. Wylie & Co.). The preparer of the returns for 1983, 1984, and 1985 was paid between $ 30 and $ 60 for preparing each such year's return. The return for each year at issue was not prepared by the return preparer from records documenting the gross receipts and expenses of Robert's roofing business or other items of petitioners' income or expense. Rather, each such return was prepared by the return preparer from summary schedules created by petitioners and provided by them to such preparer. Such schedules purported to list, among other things, gross receipts and expenses of Robert's roofing business. Petitioners did not produce any of these summary schedules except for a summary schedule for 1985 purporting to show expenses relating to Robert's roofing business (the 1985 summary of expenses). Petitioners expected the returns for the years at issue, as prepared by the return preparer, to reflect what such schedules showed as the amounts *225 of gross receipts and expenses from Robert's business. In fact, the total expense amounts reported on petitioners' 1985 return were substantially the same as those listed by petitioners on the 1985 summary of expenses. Both Robert and Sharon were capable of understanding how to calculate income from Robert's roofing business that should have been reported on the tax returns they filed for the years 1983 through 1986. Petitioners knew they had a responsibility to keep accurate records in order to determine their taxable income for such years. However, they produced no records documenting the gross receipts and expense figures appearing on the tax returns they filed for the years at issue. Nor did they produce any of the summary schedules of gross receipts that they created and provided to the return preparer for use in preparing their returns for those years. In contrast, petitioners kept all the receipts relating to the construction of a new house during the years at issue and knew how much it cost to build that house (namely, $ 74,000). Petitioners reported on their tax returns for the years 1983, 1984, 1985, and 1986 the following amounts of total income, taxable income, *226 and income tax due: Year
Total Income
Taxable Income
Income Tax Due
1983
$  5,219
$  2,219
$   0  1984
4,817
817
0  1985
5,003
0  0  1986
33,675
27,077
3,871
During the years at issue, petitioners maintained two accounts at First National Bank Mansfield, one account at First City Bank of Arlington, and one account at First City Bank - Central Arlington. Petitioners prepared a report for each of the years 1983, 1984, and 1985, which categorized checks written during each such year from petitioners' bank accounts as either "Drawings -- Robert Cagle" or "Robert Cagle -- Special". The checks written by petitioners during 1983, 1984, and 1985 which were paid through their bank accounts and which were reflected on those reports as "Drawings -- Robert Cagle" represented personal expenses incurred by petitioners during each of those years other than such expenses incurred by them during that period in building a new house. [4] The checks written by petitioners during 1983, 1984, and 1985 which were paid through their bank accounts and which were reflected on those reports as "Robert Cagle -- Special" represented personal expenses incurred by petitioners during *227 each of those years in constructing a new house. The total personal expenses paid from petitioners' bank accounts during the years 1983 through 1985 and categorized as "Drawings -- Robert Cagle" and "Robert Cagle -- Special" in the reports prepared by petitioners for such years are as follows: Checks Written
Checks Written
on "Drawings--
on "Robert
Year
Robert Cagle"
Cagle--Special"
Total
1983
$  50,425.01
$ 24,260.08
$  74,685.09
1984
65,641.07
26,581.16
92,222.23
1985
59,711.26
12,866.18
72,577.44
Total
$ 175,777.34
$ 63,707.42
$ 239,484.76
During each of the years 1983 through 1985, petitioners used deposit slips to deposit some amounts into their various bank accounts. Petitioners did not produce copies of any deposit slips but did have copies of deposit stubs for some of the deposits they made into their bank accounts during such years. It was Robert who completed those deposit stubs and *228 who made the deposits into petitioners' bank accounts of some amounts generated by his roofing business. The revenue agent who audited petitioners' income tax returns for the years at issue summarized the deposit stubs which petitioners produced for some of the deposits they made into their bank accounts during the years 1983 through 1985. [5] *229 Such deposit stubs show that petitioners deposited the following amounts into their bank accounts for each of the years 1983 through 1985 and then withdrew the following amounts of cash from such deposits: Amount of
Deposited
Amount of Cash Amount Amount of
Items After
Year
Deposited
Withheld Deposited
"Take-Offs" *
"Take-Offs"
Items 1983
$ 434,465.04
$  8,665.58
$ 425,799.46
$ 3,927.00
$ 430,538.04
1984
547,144.64
17,571.73
529,572.91
200.00
546,944.64
1985
430,059.77
11,133.35
418,926.42
3,828.32
426,231.45
Adjustments to petitioners' income for the years at issue were determined by a revenue agent from an analysis of petitioners' bank deposits in the four accounts they maintained in First National Bank Mansfield, First City Bank of Arlington, and First City Bank - Central Arlington. The revenue agent who audited petitioners' tax returns for such years prepared the bank deposits analysis from an examination of the records of these banks, including the actual deposit slips. The revenue agent used a bank deposits analysis because petitioners had advised her that, in determining their gross receipts, they used their bank deposits which they calculated from their bank deposit stubs. Moreover, petitioners did not produce any sales invoices or any other records or documentation relating to Robert's *230 business for the examining agent to review. [6] Accordingly, the revenue agent decided to use basically the same method that petitioners alleged they used in determining their gross receipts. The revenue agent was unable to reconcile the income tax returns for the years at issue with petitioners' assertion that they used their deposit stubs to determine their gross receipts for those years. The revenue agent prepared a summary for each of the years 1983 through 1985 of the results of the bank deposits analysis she had used in determining adjustments to petitioners' income for such years. These summaries show the amounts of taxable deposits which the revenue agent determined petitioners made pursuant to the bank deposits analysis and compare such taxable deposits to the gross receipts reported on petitioners' returns for such years. The following are petitioners' total taxable deposits as determined *231 by the revenue agent pursuant to the bank deposits analysis, the gross receipts reported on petitioners' returns for the years 1983, 1984, and 1985, and the resulting increase in gross receipts for each such year over the amounts so reported: Increase in Gross Taxable Deposits
Gross Receipts Reported
Receipts (Difference
Year
Per Revenue Agent
on Petitioners' Returns
Between Columns 2 and 3)
1983
$ 517,537
$ 392,126
$ 125,411
1984
598,746
508,245
90,501
1985
470,561
438,625
31,936
Petitioners stipulated to the following adjustments to their income tax returns for the years 1983 through 1986: Increase
Increase
Increase
Increase
(Decrease)
in
(Decrease)
Increase
in Gross
in Interest Bartering in Schedule in Long-Term
Year
Receipts
Income
Income
C Expenses
Capital Gain
1983
$ 125,411
$  85 $ 3,006
$  67,414 $  --  1984
90,501
-- 550
724 2,086
1985
31,936
(13)
550
(17,208)
--  1986
--   -- -- (7,192)
--  Increase in Itemized
Year
Deductions
1983
$  --  1984
--  1985
1,573
1986
--  The above-stated adjustments to which petitioners stipulated are identical (with one exception *232 discussed below) to the adjustments to which petitioners agreed and which were set forth in a proposed stipulation of facts attached to a motion respondent filed pursuant to Rule 91(f) to show cause why proposed facts in evidence should not be accepted as established. In petitioners' reply to said motion, they admitted each and every paragraph in such proposed stipulation except one paragraph (35) which they denied as inaccurate. [7] Respondent agreed that such paragraph was incorrect. The stipulation of facts executed by the parties adopted petitioners' position as to what that paragraph should state in order to be accurate. The above-stated adjustments to which petitioners stipulated are also identical to the adjustments set forth in the notice of deficiency issued by respondent *233 to petitioners. OPINION We note initially that petitioners bear the burden of proving that respondent's deficiency determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent, however, bears the burden of proof in respect of the fraud issue, and that burden is to be carried by clear and convincing evidence. Rule 142(b); sec. 7454(a). 1. Petitioners' Understated Taxable Income -- 1983, 1984, 1985, and 1986
Petitioners did not keep adequate books and records for Robert's roofing business for the years at issue. Respondent reconstructed petitioners' income for those years by the bank deposits method. The bank deposits method is an acceptable method that may be used to reconstruct a taxpayer's income. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Harper v. Commissioner, 54 T.C. 1121, 1128-1129 (1970). If by using this method respondent determines that a taxpayer's income was understated, the taxpayer normally has the burden of proving that respondent's *234 determination is erroneous. Jones v. Commissioner, 29 T.C. 601, 614 (1957). See also Mallette Bros. Construction Co. v. United States, 695 F.2d 145, 148 (5th Cir. 1983). Pursuant to Rule 91, the parties stipulated to the following, which were based, inter alia, on respondent's reconstruction of petitioners' income using the bank deposits method: 23. Petitioners' schedule C gross receipts for the year 1983 is [sic] increased by $ 125,411.00. See item 1.A. of the notice of deficiency. 24. Petitioners' interest income for the year 1983 is increased by $ 85.00. See item 1.B. of the notice of deficiency. 25. Petitioners' bartering income for the year 1983 is increased by $ 3,006.00. See item 1.C. of the notice of deficiency. 26. Petitioners' schedule C expenses for the year 1983 are increased by $ 67,414.00. See item 1.D. of the notice of deficiency. 27. Petitioners' schedule C gross receipts for the year 1984 is [sic] increased by $ 90,501.00. See item 1.A. of the notice of deficiency. 28. Petitioners' bartering income for the year 1984 is increased by $ 550.00. See item 1.C. of the notice of deficiency. *235 29. Petitioners' schedule C expenses for the year 1984 are increased by $ 724.00. See item 1.D. of the notice of deficiency. 30. Petitioners' [sic] had a long-term capital gain of $ 2,086.00 in 1984. 31. Petitioners' schedule C gross receipts for the year 1985 is [sic] increased by $ 31,936.00. See item 1.A. of the notice of deficiency. 32. Petitioners' interest income for the year 1985 is decreased by $ 13.00. See item 1.B. of the notice of deficiency. 33. Petitioners' bartering income for the year 1985 is increased by $ 550.00. See item 1.C. of the notice of deficiency. 34. Petitioners' schedule C expenses for the year 1985 are decreased by $ 17,208.00. See item 1.D. of the notice of deficiency. 35. Petitioners' itemized deductions for the year 1985 are increased by $ 1,573.00. 36. Petitioners' schedule C expenses for 1986 are reduced by $ 7,192.00. See item 1.D. of the notice of deficiency.
Except for paragraph 35, the foregoing stipulations, as well as the remaining stipulations in the stipulation of facts filed herein, are identical to the proposed stipulations that were included in the proposed stipulation of facts attached to respondent's Rule 91(f) *236 motion. In petitioners' reply to said motion, they admitted each and every paragraph in such proposed stipulation of facts, including paragraphs identical to the foregoing stipulations, except paragraph 35 which they denied as inaccurate and which was corrected by respondent in the stipulation of facts signed by the parties. Nonetheless, petitioners argued at trial that they do not agree with the stipulation of facts or the supplemental stipulation of facts they signed or with the admissions they made that the proposed stipulation of facts attached to respondent's Rule 91(f) motion was accurate except for paragraph 35. Petitioners reasserted their disagreement with the stipulation of facts and the supplemental stipulation of facts in their opening brief and their answering brief. [8] In their opening brief petitioners attempted to revoke their signatures on all "Stipulations and Petitions" and stated that many of the figures used by the examining agent were incorrect. In their answering brief, petitioners stated their disagreement with many, but not all, of the stipulations contained in the stipulation of facts and the supplemental stipulation of facts. As to the stipulated adjustments *237 to income and expenses set forth above, petitioners stated that they were "unsure of these figures, not having the full knowledge in these areas." [9]
*238 As part of their effort to renege on their stipulations and admissions, petitioners attempted to introduce at trial a purported, revised reconstruction of their income which they had prepared. [10] According to petitioners, the purported, revised reconstruction of income would show that there were some nontaxable deposits made into their bank accounts during the years at issue consisting of transfers from one of petitioners' bank accounts to another and that therefore they did not have taxable deposits in the amounts determined by respondent. *239 The Court questioned petitioners extensively as to why they would sign a stipulation of facts, a supplemental stipulation of facts, and a reply to respondent's Rule 91(f) motion with which they did not agree. Petitioners' explanation was that they were relying on their accountant who advised them to sign those documents, even though they did not agree with them. At trial, the Court ruled that petitioners would be bound by the facts to which they stipulated and that petitioners' purported, revised reconstruction of income would not be allowed into evidence. We will elaborate herein on our reasons for so ruling. A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. Rule 91(e). The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. Id. Thus, parties are bound by their stipulations unless there is a showing that it would have been manifestly unjust not to disregard the stipulations or that evidence contrary to the stipulations *240 is substantial. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir. 1978); Henry v. Commissioner, 362 F.2d 640, 643 (5th Cir. 1966), affg. T.C. Memo. 1964-170. No such showing was made here. In reaching this conclusion, we were influenced by our observation of the demeanor of each of the petitioners. Based on the Court's opportunity to observe the demeanor and evaluate the credibility of both Robert and Sharon, we did not find either to be a credible witness. Nor were we convinced that petitioners are the unsophisticated and unknowledgeable individuals who they portray themselves to be. The Court found incredible, and did not believe, petitioners' testimony that, although they did not agree with the documents in question, they signed them because their accountant advised them to do so. It is noteworthy that petitioners did not call their accountant as a witness at trial. We infer that, if the accountant had been called to testify, his testimony would have been unfavorable to petitioners. [11]McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), *241 affd. 886 F.2d 1237 (9th Cir. 1989); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners' attempt to repudiate their stipulations and admissions is intertwined with their effort to introduce at trial a purported, revised reconstruction of their income. Under the Court's standing pretrial order, any documents or materials which a party expects to utilize *242 in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court's standing pretrial order further provides that the Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. At trial, respondent advised the Court that it was not until late in the afternoon on December 4, 1992, three days before the first day of the trial session for which this case was calendared, that petitioners for the first time provided to respondent the purported, revised reconstruction of income which they attempted to introduce at trial. Petitioners offered no explanation as to why they waited until late on December 4, 1992, to give respondent such purported reconstruction of income. Respondent's counsel represented at trial that he did not have ample time to examine such purported reconstruction, given its novelty and complexity and the extremely short period of time before the first day of the trial session at which this case was to be called. *243 Respondent's counsel further advised the Court that respondent was relying upon petitioners' admissions in their reply to respondent's Rule 91(f) motion that all the facts set forth in the proposed stipulation of facts attached to such motion were correct, except for paragraph 35 which respondent subsequently corrected in the stipulation of facts signed by the parties in this case. In our opinion, under the foregoing circumstances, petitioners did not show good cause for excusing them from compliance with the Court's standing pretrial order that they provide respondent with any documents or materials they expected to use at trial at least 15 days before the first day of the trial session. In fact, they offered no reason for excusing them. Furthermore, we believed that, under such circumstances, respondent would have been prejudiced if we were to have allowed petitioners to introduce at trial their purported, revised reconstruction of income. Accordingly, petitioners will not be relieved from the stipulation of facts, the supplemental stipulation of facts, or the admissions in their reply to respondent's Rule 91(f) motion. These documents establish that petitioners understated *244 their taxable income for each of the years at issue. 2. Additions to Tax for Fraud -- 1983, 1984, and 1985
Respondent determined that petitioners are liable for the additions to tax for fraud for 1983, 1984, and 1985 under section 6653(b)(1) and (2). Section 6653(b)(1) imposes an addition to tax equal to 50 percent of the entire underpayment of tax if any part of such underpayment is due to fraud. Section 6653(b)(2) applies the addition to tax only to that portion of the underpayment attributable to fraud. The parties have stipulated that there was an understatement of taxable income for each of the years 1983 through 1985. Thus, there was an underpayment of tax for each such year. Consequently, the only issue for such years remaining under section 6653(b)(1) and (2) is whether the underpayment was due to fraud. The existence of fraud is a question of fact. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Loftin & Woodard, Inc. v. United States, 577 F.2d at 1238-1239; DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), *245 affd. 959 F.2d 16 (2d Cir. 1992); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion. Toussaint v. Commissioner, supra at 312; Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9. Direct evidence of the requisite fraudulent intent is seldom available. Thus, fraud may be proved by respondent by circumstantial evidence. Toussaint v. Commissioner, supra at 312; Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The courts have developed various factors which tend to establish that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, *246 mislead, or otherwise prevent the collection of tax. Parks v. Commissioner, 94 T.C. 654, 661 (1990); Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987). These so-called "badges of fraud" include (1) consistent and substantial understatement of income; (2) inadequate books and records; (3) lack of credibility of the taxpayer's testimony; (4) incomplete and erroneous information provided to tax return preparer or bookkeeper; and (5) implausible explanations of behavior. Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Loftin & Woodard, Inc. v. United States, 577 F.2d at 1238-1239; Webb v. Commissioner, 394 F.2d 366, 379, 380 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Bahoric v. Commissioner, 363 F.2d 151, 153 (9th Cir. 1966), affg. T.C. Memo. 1963-333; *247 Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Woodham v. Commissioner, 256 F.2d 201, 204 (5th Cir. 1958), affg. T.C. Memo. 1955-319; Baumgardner v. Commissioner, 251 F.2d 311, 323 (9th Cir. 1957), affg. T.C. Memo. 1956-112; DiLeo v. Commissioner, supra at 875; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Federbush v. Commissioner, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. Bradford v. Commissioner, supra at 307; Webb v. Commissioner, supra at 380; Merritt v. Commissioner, supra at 487. Having considered the entire record before us, we conclude that petitioners' underpayments *248 of tax for 1983, 1984, and 1985 were due to fraud. a. Consistent and Substantial Understatement of Income
Petitioners substantially understated their gross receipts, total income, and taxable income for each of the years 1983, 1984, and 1985. Both Robert and Sharon understood their obligation to report all income. Sharon understood the concepts of gross receipts and expenses. Robert, although claiming to be ignorant as to what the concept of gross receipts entailed, was not credible on this point. He admitted that he understood that expenses are subtracted from the "total figure of deposits" in determining income from his business. It would strain credulity to conclude that Robert, who has operated his own roofing business since 1971, did not understand how to calculate income from that business. Petitioners stipulated to additional gross receipts from Robert's business for 1983, 1984, and 1985 in the amounts of $ 125,411, $ 90,501, and $ 31,936, respectively. Petitioners reported total income of $ 5,219, $ 4,817, and $ 5,003 for 1983, 1984, and 1985, respectively. They reported taxable income of $ 2,219, $ 817, and $ 0 for 1983, 1984, and 1985, respectively. Petitioners *249 stipulated to total adjustments to their tax returns for 1983, 1984, and 1985 in the amounts of $ 61,088, $ 92,413, and $ 48,108, respectively. For each of the years 1983, 1984, and 1985, a comparison of either the total income reported with the stipulated corrected total income or the total taxable income reported with the stipulated corrected total taxable income reveals a consistent and substantial understatement of income for each of those years. This is strong evidence of fraud with intent to evade taxes. Webb v. Commissioner, supra at 379; Merritt v. Commissioner, supra at 487. b. Inadequate Books and Records
Petitioners failed to keep adequate books and records. Although Robert and Sharon were aware of their responsibility to maintain sufficient records in order to determine the amount of their income, they had no records documenting the information reported on their 1983, 1984, and 1985 returns.[12] Sharon's educational background and practical experience made her capable of keeping itemized records of income and expense. The failure of petitioners to maintain adequate records is a strong indicium *250 of fraud with intent to evade taxes. Estate of Upshaw v. Commissioner, 416 F.2d 737, 741 (7th Cir. 1969), affg. T.C. Memo. 1968-123; Bryan v. Commissioner, 209 F.2d 822, 823 (5th Cir. 1954), affg. a Memorandum of this Court dated Oct. 10, 1951.
c. Lack of Credibility of the Taxpayer's Testimony
Although mere refusal to believe the taxpayer's testimony does not discharge respondent's burden, the lack of credibility of the taxpayer's testimony, the inconsistencies in that testimony, and the taxpayer's evasiveness on the stand are factors to be weighed in deciding the fraud issue. Toussaint v. Commissioner, 743 F.2d at 312; Henry v. Commissioner, 362 F.2d at 643-644; *251 George v. Commissioner, 338 F.2d 221, 223 (1st Cir. 1964), vacating and remanding T.C. Memo. 1963-326. The Court had ample opportunity to gauge petitioners' credibility and did not find either Robert or Sharon to be credible in certain critical respects. Suffice it to say at this point that we do not believe the testimony of both Robert and Sharon that they compiled the lists of their gross receipts for the years 1983, 1984, and 1985, which they gave to the preparer of the returns for such years, from their bank deposit stubs which are part of the record here. Those deposit stubs showed gross receipts in excess (by about $ 38,000) of those reported on the returns for 1983 and 1984 and showed gross receipts of approximately $ 12,000 less than those reported on the return for 1985. Petitioners could not explain these differences. The most likely explanation is that, contrary to their testimony, petitioners did not use the deposit stubs to prepare the lists of gross receipts which they provided to the return preparer for use in the preparation of their returns for the years 1983, 1984, and 1985. d. Incomplete and Erroneous *252 Information Provided to Bookkeeper or Tax Return Preparer
Another indication of fraud relates to a taxpayer's failure to provide accurate information to such taxpayer's bookkeeper or tax return preparer. Merritt v. Commissioner, 301 F.2d at 487; DiLeo v. Commissioner, 96 T.C. at 875; Federbush v. Commissioner, 34 T.C. at 749. In the present case, petitioners did not provide correct information to the preparer of their returns for 1983, 1984, and 1985. Petitioners did not give the preparer any documents or records substantiating the gross receipts and expenses which they listed and provided to such return preparer. Petitioners did not give the return preparer bank deposit slips or bank deposit stubs in order for the preparer to determine accurately their gross receipts. Rather, petitioners prepared inaccurate lists of their gross receipts for the years 1983, 1984, and 1985 and gave such lists to the preparer. Both petitioners testified that they expected the preparer merely to transfer to the returns for such years the gross receipts figures they provided to her. [13]
*253 Petitioners also testified that they compiled the lists of gross receipts for the years 1983, 1984, and 1985, which they gave to the return preparer, from their bank deposit stubs. However, as noted above, we do not find this testimony to be credible. We do not believe that petitioners used those deposit stubs to prepare the lists of gross receipts which they gave to their return preparer. Rather, based on the entire record herein and our observation of petitioners' demeanor when they testified and our evaluation of their credibility, we believe that petitioners knew that the gross receipts figures which they provided to the preparer of their returns for 1983, 1984, and 1985 were not accurate. It is significant in this regard that petitioners were not even able to produce the schedules which they provided to the return preparer purporting to list gross receipts and expenses except for the 1985 summary of expenses. [14]
*254 e. Implausible Explanations of Behavior
It is also significant that petitioners signed and filed their income tax returns for 1983, 1984, and 1985 during a period when they were spending substantial amounts on personal expenses. Petitioners stipulated to personal expenses (including the amounts spent in building their house) for the years 1983, 1984, and 1985 in the amounts of $ 74,685.09, $ 92,222.23, and $ 72,577.44, respectively. [15] In contrast to the personal expenses for 1983, 1984, and 1985 to which petitioners stipulated, petitioners reported total income for each of those years which would cover only approximately five to seven percent of those expenses. Common sense should have told petitioners that they could not possibly live on a roughly $ 80,000 lifestyle and yet report only approximately $ 5,000 a year in total income and pay no income taxes for three consecutive years. *255 When asked how they thought they were able to spend so much on personal items without paying any income tax, Sharon's only explanation was that they cut corners and bought used clothes. Her testimony was implausible and unpersuasive. Robert could not explain the source for the $ 74,000 petitioners spent to build a house during the period 1983 through 1985, except for a claim he made that they had cash on hand of $ 17,500 at the beginning of 1983. Robert's testimony was implausible, vague, and not credible. It was also the first time since the audit of the returns in question began in 1986 that he ever alleged that petitioners had a cash hoard at the beginning of 1983. Any person with common sense and who intended to pay income tax due would have known something was awry upon filing income tax returns for a period of three consecutive years, which showed no income tax due, during which time such person was spending a total of approximately $ 240,000 on personal living expenses. Petitioners' implausible explanations of their behavior during this period are further evidence of fraudulent intent to evade taxes. Bradford v. Commissioner, 796 F.2d at 307; *256 Bahoric v. Commissioner, 363 F.2d at 154; Baumgardner v. Commissioner, 251 F.2d at 321. Based on the entire record, respondent has clearly and convincingly established that petitioners' entire understatement of tax for each of the years 1983, 1984, and 1985 was due to fraud. Accordingly, petitioners are liable for the additions to tax under section 6653(b)(1) and (2) for such years. 3. Additions to Tax for Negligence -- 1986
Petitioners made no argument and presented no evidence on the addition to tax for negligence imposed by respondent for 1986. Accordingly, we find petitioners are liable for the additions to tax for negligence for 1986 under section 6653(a)(1)(A) and (B). 4. Addition to Tax for Substantial Understatement of Income Tax -- 1983, 1984, and 1985
Section 6661 imposes an addition to tax where the understatement exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Petitioners have stipulated to adjustments to their income tax returns for each of the years 1983, 1984, and 1985. For each such year, the understatement of tax attributable to such adjustments *257 exceeds both $ 5,000 and 10 percent of the tax required to be shown on the return. Petitioners advanced no argument and presented no evidence with respect to the addition to tax under section 6661. Consequently, we hold that petitioners are liable for such addition for each of the years 1983 through 1985. 5. Self-Employment Tax -- 1983 Through 1986
Petitioners made no argument and did not present any evidence to demonstrate that they were not liable for self-employment tax. Therefore, petitioners are liable for such tax for each of the years 1983 through 1986. 6. Earned Income Credit Recapture -- 1983, 1984, and 1985
Petitioners did not advance any argument and offered no evidence concerning whether they are not liable for the earned income credit recapture. Thus, petitioners are liable for such recapture for each of the years 1983 through 1985. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to fraud. Respondent determined that the entire underpayment for each of the years 1983 through 1985 was due to fraud.↩
**. 50 percent of the interest due on the portion of the underpayment attributable to negligence. Respondent determined that the entire underpayment for 1986 was attributable to negligence.↩
2. In light of our holdings relating to the additions to tax for fraud for 1983, 1984, and 1985, we do not address respondent's alternative contentions relating to the additions to tax for negligence for 1983, 1984, and 1985 and for failure to file for 1983.↩
3. The parties filed two stipulation documents, with certain exhibits attached to such documents. One document was headed and will hereinafter be referred to as "stipulation of facts"; the second document was headed and will hereinafter be referred to as "supplemental stipulation of facts".↩
4. Some of petitioners' personal expenses included expenses for a ski vacation to Colorado.↩
5. The revenue agent did not use such deposit stubs to determine petitioners' income for the years at issue. Rather, as explained below, the agent conducted an analysis of petitioners' actual bank deposits from bank records in making adjustments to petitioners' gross receipts.↩
*. For 1983, 1984, and 1985, the deposit stubs showed certain amounts as "take-offs". The amount of "take-offs" represented amounts received by petitioners and deposited into their bank accounts, but which they alleged were not gross receipts from Robert's business or income otherwise earned by petitioners.↩
6. As noted above, petitioners did provide to the agent the 1985 summary of expenses relating to Robert's business.↩
7. Specifically, petitioners asserted in their reply that paragraph 35 of the proposed stipulation of facts should be corrected to state that petitioners' itemized deductions for the year 1985 are increased, rather than decreased, by $ 1,573.↩
8. After trial, petitioners submitted two letters to the Court. The Court has treated the first such letter as petitioners' opening brief and the second such letter as petitioners' answering brief.↩
9. In their opening and answering briefs, petitioners also attempted to raise several new issues which they had not previously advanced. For example, in their opening brief, petitioners asserted that a notice of deficiency had not been sent to them and that they had not received a copy of an Internal Revenue Service publication purportedly titled "Your Rights as a Taxpayer". In their answering brief, petitioners stated, in part: We, Robert and Sharon Cagle deny any knowledge of a requirement to file returns or pay tax. We followed IRS's instructions, not knowing our rights. We also filed all returns unwillingly, unknowingly, and unintentionally. We made appeal to the Tax Court without full knowledge of our rights. We motion that our case be dismissed based on failure of I.R.S. to inform us of our rights per MT 9781-32 Section 342.12, and 342.132. See Miranda v State of Arizona.
None of the foregoing issues were raised in the petition herein. It is well settled that issues raised for the first time on brief will not be considered when to do so prevents the opposing party from presenting evidence that she might have if the issue had been timely raised. DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Shelby U.S. Distributors, Inc. v. Commissioner, 71 T.C. 874, 885↩ (1979). Here, respondent had no opportunity to present evidence or arguments relating to the new contentions advanced by petitioners in their opening and answering briefs. In any event, all of petitioners' new arguments are frivolous, are not dispositive of the issues presented in this case, and/or are refuted by the record.
10. According to respondent, during the course of the audit of petitioners' returns for the years at issue, petitioners employed a C.P.A. to reconstruct their income and expenses for those years. Respondent's counsel represented that this reconstruction showed amounts of income and expense which are substantially the same as most of the reconstructed income and expense figures to which petitioners stipulated. Respondent's counsel further represented that the purported, revised reconstruction of income which petitioners attempted to introduce at trial used a completely different bookkeeping system from the one previously developed by petitioners' C.P.A. and provided to respondent. Petitioners did not dispute any of respondent's representations.↩
11. Petitioners stated that their accountant told them that he could not be called as a witness at trial. Leaving aside the obvious hearsay problems with this statement and assuming the statement were true, a plausible explanation for the statement is that the accountant could not be called as a witness because his testimony would not have been favorable to petitioners.↩
12. They did produce the 1985 summary of expenses, with no substantiating documentation, relating to Robert's roofing business as well as deposit stubs relating to some of the deposits petitioners made into their bank accounts during the years at issue.↩
13. Petitioners also expected that, in preparing such returns, the preparer would use the expense figures they gave her.↩
14. Nor could petitioners explain why the gross receipts reported on the returns for the years at issue were understated. Petitioners' failure to furnish any, let alone a reasonable, explanation for the understatement of income for each of the years 1983, 1984, and 1985 is also persuasive evidence of intent to evade the payment of tax. Woodham v. Commissioner, 256 F.2d 201, 204 (5th Cir. 1958), affg. T.C. Memo. 1955-319↩.
15. During the audit of petitioners' returns for the years at issue, Sharon prepared, at the request of the revenue agent, a rough estimate of personal living expenses. Sharon's estimate showed personal expenses of $ 39,255 for 1983 and personal expenses of $ 37,135 for 1984.↩